2011 VT 26

### In re Soon KWON

[19 A.3d 139]

No. 09-366

¶ 1. February 23, 2011. Landlord appeals from a superior court order affirming the Burlington Housing Board of Review's decision directing landlord to return tenants' security deposit. Landlord contends the court erred in: (1) declining to hold a de novo hearing; (2) concluding that landlord failed to provide proper notice of the security-deposit statement; (3) determining the amount of the deposit to be returned; (4) upholding the Board's authority to conduct a hearing before a single hearing officer; and (5) concluding that questions posed by the Board's clerk during the hearing did not invalidate the proceeding. We affirm.

¶ 2. The material facts are not in dispute: In June 2006, landlord and six tenants, who were university students, entered into a one-year lease for a rental unit on Colchester Avenue in Burlington. Tenants provided a security deposit of $2970. In early 2007, the parties entered into a second one-year lease. Although the second lease recited a security deposit of $3180, there was no evidence that any additional security was provided beyond the original $2970. In June 2008, following the expiration of the second lease and after tenants had moved out, landlord sent a statement to tenants indicating that he held a remaining security deposit of $852.11, based upon deductions for damages allegedly caused during the first lease term, and that tenants had caused certain additional damage to which he was applying the remaining $852.11 deposit. Landlord sent the statements regarding the remaining security deposit to the addresses of the emergency contacts listed on tenants' rental applications. Landlord mailed five of the six letters via regular mail and sent only one letter via certified mail.

¶ 3. Three tenants, purporting to speak for all, challenged the effectiveness of landlord's security-deposit statement. These tenants filed a request for hearing form with the Burlington Housing Board of Review (Board) on July 3, 2008 in which they stated that their reason for requesting a hearing was "to dispute security deposit." On July 22, 2008, the Board sent both landlord and tenants a "Notice of Hearing" form in which it gave notice of the date and time of the hearing and stated that "Each party will be given the opportunity to present the facts . . . and to make legal arguments. The Board will hear testimony and 'other evidence' in support of each party's position. 'Other evidence' includes notices, receipts for repairs, written lease, move-in checklist and correspondence between the parties."*

---

* This "Notice of Hearing" form was independently obtained from the Burlington Housing Board of Review as it could not be found in the trial court record.

¶ 4. Following an August 18, 2008, hearing before a hearing officer, the Board issued a written decision concluding that landlord had forfeited his right to retain the security deposit by failing to send the deposit statements by certified mail to tenants' last known address, as required by Vermont's Landlord and Tenant Act (Act), 9 V.S.A. §§ 4451-4468, and the Burlington Housing Code. See *id.* § 4461(e) (stating that if landlord fails to send security-deposit statement and funds within fourteen days of end of lease term, "the landlord forfeits the right to withhold any portion of the security deposit"). Landlord appealed the ruling pursuant to 24 V.S.A. § 5006, which allows an appeal to the superior court by any person aggrieved by a decision of the Board. The trial court conducted an on-the-record review and issued a thorough ten-page ruling affirming the Board's decision. This appeal followed.

¶ 5. As a threshold argument, landlord asserts that the trial court erred in declining to conduct a de novo evidentiary hearing or, alternatively, in reviewing the Board's conclusions independently. This Court reviews the superior court's legal conclusion with regard to the proper standard of review de novo. *Rhoades Salvage/ABC Metals v. Town of Milton Selectboard*, 2010 VT 82, ¶ 6, 188 Vt. 629, 9 A.3d 685 (mem.).

¶ 6. The trial court correctly determined that landlord's appeal to the superior court was pursuant to V.R.C.P. 74, "which governs appeals from governmental agencies when the right to appeal is given by statute," *Conservation Law Found. v. Burke*, 162 Vt. 115, 125, 645 A.2d 495, 501 (1993), and therefore was "on the record and not de novo." *Id.* at 126, 645 A.2d at 502; see also *Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294-95, 415 A.2d 216, 218-19 (1980) (stating that judicial review of agency decisions is presumed to be on-the-record absent specific statutory authorization to the contrary). In such cases, the court's task is solely to determine whether there was "any reasonable basis for the [agency's] finding[s]." *Tri-State Indus. Laundries, Inc.*, 138 Vt. at 294, 415 A.2d at 218; see also *Town of Victory v. State*, 2004 VT 110, ¶¶ 16-17, 177 Vt. 383, 865 A.2d 373 (stating that "we presume that judicial review of administrative decisions is deferential absent a clear statement of contrary intent," and noting that on-the-record review is particularly appropriate in "contested cases where there has been an adjudication in the agency" and where the adjudicative body has special expertise). The courts "employ a deferential standard of review" of an agency's interpretation and application of its own regulations. *Burke*, 162 Vt. at 121, 645 A.2d at 499. Accordingly, we find no error in the court's method or standard of review.

¶ 7. With regard to landlord's subsequent arguments, our standard of review is the same as the superior court's when reviewing board findings, which is to say, we employ on-the-record, as opposed to de novo, review. *Id.* at 126, 645 A.2d at 502. Like the superior court, we also apply a deferential standard of review to agency decisions. *In re Williston Inn Grp.*, 2008 VT 47, ¶ 11, 183 Vt. 621, 949 A.2d 1073 (mem.). When reviewing the superior court's conclusions as to issues of law, our review is de novo. *Borden v. Hofmann*, 2009 VT 30, ¶ 9, 185 Vt. 486, 974 A.2d 1249.

¶ 8. Turning to the merits of the case, landlord contends that the trial court and Board erred in concluding that landlord failed to comply with the notice requirements of the Act and the city ordinance. As an initial matter, we briefly consider whether tenants waived the notice defense entirely when they failed to specifically raise it in the first instance at the Board. The trial court addressed the issue of waiver in the context of landlord's June 2007 letter but did not consider it

with regard to the June 2008 letter. In considering administrative hearings, this Court has generally held that parties must be given "reasonable" advance warning of the issues that will be raised at the hearing, and notice of such issues need not meet the exacting requirements of judicial proceedings. *In re Vermont Health Serv. Corp.*, 155 Vt. 457, 461, 586 A.2d 1145, 1147 (1990); *In re Hot Spot, Inc.*, 149 Vt. 538, 540, 546 A.2d 799, 801 (1988). It is critical to a fair hearing that parties be given an adequate opportunity to prepare and respond to all issues that will be raised at a hearing. *In re Green Mountain Power Corp.*, 131 Vt. 284, 293, 305 A.2d 571, 577 (1973). In this case, while it is true that on their official request for hearing form tenants did not specifically challenge landlord's compliance with the security deposit notice requirements, landlord was given fair warning by the Board's July 22, 2008, notice of hearing that "notices" and "correspondence between the parties" would be considered as part of the security-deposit hearing. The notice of hearing that the Board sent to landlord provided "reasonable" notice to landlord that the inadequacies in the way he provided tenants with security-deposit statements would be considered, and we therefore hold that tenants' failure to specifically raise the issue of notice did not lead to a waiver of the issue.

¶ 9. Given that tenants' notice defense was not waived, we consider landlord's argument that he did not fail to comply with the notice requirements of the Act and the city ordinance. In construing the Act and city ordinance, we "look first to the plain, ordinary meaning of the language"; and we "defer to the construction of a statute by the agency responsible for implementing it." *Borden*, 2009 VT 30, ¶ 10 (quotation omitted).

¶ 10. The relevant provision of the Act requires that landlord provide notice of the security-deposit statement "by hand-delivering or mailing the statement . . . to the last known address of the tenant." 9 V.S.A. § 4461(d). The ordinance supplements this requirement with two additional provisions: one requires that tenants "furnish the owner a forwarding address to enable the owner to return all or part of the deposit as required," and the other provides that landlords "shall comply with this section by hand-delivering or sending by certified mail the statement and any payment required to the last-known address of the tenant, which may be the rental unit if no forwarding address has been provided." Burlington Code of Ordinances § 18-120(c).

¶ 11. Although landlord contested the claim, tenants testified, and the Board found, that tenants had provided landlord with their forwarding addresses in writing. The Board concluded that landlord's failure to use these addresses, rather than the emergency contact addresses provided by tenants in their rental applications two years earlier, constituted a violation of the Act and the ordinance. The Board's factual finding was supported by the record, and its conclusion that a tenant's "last-known address" should be the forwarding address provided by the tenant was consistent with the statute and ordinance and therefore must be upheld. See *Burke*, 162 Vt. at 121, 645 A.2d at 499 ("We employ a deferential standard of review of an agency's interpretation of its own regulations.").

¶ 12. In addition, the trial court noted that landlord failed to send certified letters to five of the six tenants, further failing to comply with the ordinance. Although landlord asserts that the certified-mail requirement is inconsistent with the Act, the latter expressly authorizes local towns and cities to adopt provisions to supplement the Act's "minimum protections," which would clearly encompass the city's certified-mail requirement. 9 V.S.A. § 4461(g) (authorizing a town or city to "adopt an ordinance governing security

deposits," which "shall be supplemental to and not inconsistent with the minimum protections of the provisions of this section"). Accordingly, we find no error with the conclusion that landlord failed to comply with statutory notice requirements.

¶ 13. Landlord further asserts that, even if he failed to provide statutorily compliant notice, the Board and trial court erred in rejecting the sufficiency of "actual and undisputed notice" under the Act. Essentially, landlord's argument is that because tenants were not prejudiced by noncompliance with the statute and ordinance with respect to the method of giving notice, he should not be denied access to the security deposit. He argues that we have already ruled that actual notice trumps any statutory notice requirements in *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 625, 572 A.2d 925, 929 (1990). We conclude that landlord reads more into *Hinsdale* than is fairly in the decision. The question in that case was whether a decision of a zoning board of adjustment was rendered beyond the statutory time deadline so that the permit was granted by operation of law. The facts were that the decision was rendered within the statutory time limit and the plaintiff received oral notice of the decision, but a copy was not sent by certified mail within that time limit, as required by statute. We held that the rendering of the decision within the statutory time limit, plus oral notice of the decision within that time, was sufficient to comply with the statute despite the delay in sending the copy by mail. *Id.* The main rationale of *Hinsdale* was that the result was required by the wording of the applicable statute. *Id.* at 623, 572 A.2d at 928. Secondarily, we held that the extreme remedy of granting a permit by operation of law because of delay in rendering a decision should be used sparingly only where the legislative purpose of preventing protracted decision-making is being implemented. *Id.* at 624, 572 A.2d at 928. Contrary to plaintiff's argument, *Hinsdale* does not stand for the proposition that actual notice trumps the specific method of giving notice contained in a statute.

¶ 14. Nevertheless, we recognize that the general rule around the country is that "[s]tatues that impose certain technical requirements for notice should not be strictly enforced where the party seeking enforcement had actual notice and cannot show prejudice as a result of the failure to follow the technical requirements." *Macon-Atlanta State Bank v. Gall*, 666 S.W.2d 934, 940 (Mo. Ct. App. 1984); see also *Twenty-Four Merrill Street Condo. Ass'n v. Murray*, 902 A.2d 24, 28-29 (Conn. App. Ct. 2006); *Bd. of Comm'rs of Port of New Orleans v. Turner Marine Bulk, Inc.*, 629 So. 2d 1278, 1283 (La. Ct. App. 1993); *First Nat'l Bank v. Oklahoma Sav. & Loan Bd.*, 569 P.2d 993, 997 (Okla. 1977). The application of the general rule is, however, dependent on the statutory scheme and the content of the legislation. Courts have noted in landlord and tenant cases that they " 'have been insistent upon the landlord's punctilious compliance with all statutory eviction procedures,' including notice provisions." *Weise v. Dover Gen'l Hosp. & Med. Ctr.*, 608 A.2d 960, 963 (N.J. Super. Ct. App. Div. 1992) (quoting *Sacks Realty Co. v. Batch*, 591 A.2d 660, 661 (N.J. Super. Ct. App. Div. 1991). Thus, the District of Columbia Court of Appeals has held failure to comply with statutory requirements in serving a notice to quit renders the notice ineffective even if the landlord can prove actual receipt. *Jones v. Brawner Co.*, 435 A.2d 54, 56 (D.C. 1981); see also *Russell v. Dep't of Hous. & Urban Dev.*, 836 A.2d 576, 578 (D.C. 2003) (noting tenant's actual receipt of notice is "irrelevant"); *American Mgmt. Consultant, LLC v. Carter*, 915 N.E.2d 411, 428 (Ill. App. Ct. 2009) (holding that even though tenant received actual notice, service method of notice to quit did not comply with statute and precludes land-

lord from obtaining eviction relief); *Regency Towers LLC v. Landou*, 807 N.Y.S.2d 863, 865 (Civ. Ct. 2006) (finding that if notice is jurisdictional, sending to incorrect address cannot be cured by receipt); *ATM Four, L.L.C. v. Ramos*, 728 N.Y.S.2d 657, 660 (Dist. Ct. 2001) ("Inasmuch as the language of the applicable statute regarding service of a renewal notice is clear, the Court will deem service in any other manner inappropriate."); *Miller v. MMT Corp.*, 700 N.Y.S.2d 388, 391 n.3 (Civ. Ct. 1999) (noting general rule applies when manner of notice requirement is contained in lease, but not when statute requires that notice be served in specific manner).

¶ 15. We reject the landlord's argument in this case. The security deposit section of the Landlord and Tenant Act is clearly a consumer protection provision regulating contractual security deposit procedures, and the City of Burlington has added to it additional procedures. The primary obligation of the landlord is to return the deposit, net of any deduction for damage to the premises or for unpaid rent. Accompanying the payment, if any, must be an itemization of any deductions and a notice that the tenant can appeal to the Housing Board of Review. Burlington Code of Ordinances § 18-120(c).

¶ 16. The method of delivery is explicit in the statute: "The landlord *shall* comply with this section by hand-delivering or mailing the statement and any payment required to the last known address of the tenant." 9 V.S.A. § 4461(d) (emphasis added). The ordinance adds that the statement and payment must be hand-delivered or sent by certified mail and states that the last-known address of the tenant may be the address of the rental unit if no forwarding address is given. Burlington Code of Ordinances § 18-120(c).

¶ 17. The statute states a consequence of not complying with its requirements: "If a landlord fails to return the security deposit with a statement within 14 days, the landlord forfeits the right to withhold any portion of the security deposit." 9 V.S.A. § 4461(e); see also Burlington Code of Ordinances § 18-120(c). We must read the sections of the statute together as a harmonious whole. See *TD Banknorth, N.A. v. Dep't of Taxes*, 2008 VT 120, ¶ 15, 185 Vt. 45, 967 A.2d 1148 ("When interpreting a statute, this Court will not excerpt a phrase and follow what purports to be its literal reading without considering the provision as a whole, and proper construction requires the examination of the whole and every part of the statute." (quotation omitted)). Thus, we read the undefined word "return" in subsection (e) as meaning compliance with subsection (d), the manner of notice subsection. The statute provides an explicit forfeiture remedy for noncompliance with subsection (d). We cannot allow an alternative method of giving notice.

¶ 18. We note that this conclusion is consistent with the Act's definition of "[a]ctual notice" as "receipt of written notice hand-delivered or mailed to the last known address." 9 V.S.A. § 4451(1). Landlord's argument is based on a definition of actual notice as receipt of written notice, regardless of how that notice is delivered. The Legislature adopted a more narrow definition of what can constitute actual notice.

¶ 19. Finally, we recognize that there is a clear rationale in this context for requiring specific methods of giving notice and rejecting others. It is likely that the primary concern of the Legislature was the expeditious return of security deposits. It implemented that concern by requiring that the deposit, if any, be returned within fourteen days after the tenant leaves the dwelling unit. The required methods of returning the deposit are likely to cause expeditious receipt; other methods may not. Thus, we have to view prejudice to the tenant as the impact of delay in receiving back all or part of the security

deposit, rather than the delay in receiving the landlord's accounting.

¶ 20. Moving beyond notice, landlord next contends the trial court erred in rejecting the claim that tenants were responsible for at least the difference between the original deposit of $2970 and the amount remaining of $843 based upon deductions for damages allegedly committed during the first lease period. The trial court concluded that landlord's letter from June 2007 detailing the earlier deductions was ineffective because it did not inform tenants of their right to request a hearing before the Board within thirty days of receipt of the letter, as required by the ordinance. Although landlord asserts that the absence of such a statement does not require forfeiture of the amounts sought from the deposit, the ordinance indicates otherwise. Burlington Code of Ordinances § 18-120(c) (providing that landlord's security-deposit statement must include notice of right to appeal to Board and that if landlord fails to provide such statement "the landlord forfeits the right to withhold any portion of the security deposit"). Accordingly, we find no error.

¶ 21. Landlord further contends the court erred in upholding the Board's authority to conduct a hearing before a single member. The City's ordinance provides that the Board may "for purposes of expedition . . . designate one (1) or more of its members to sit as hearing officer(s) to hear and decide matters brought before the board." Burlington Code of Ordinances § 18-54. Landlord relies on 24 V.S.A. § 5005(c)(4), which provides that "[i]n order to hear an appeal, a majority of the board must be present." This case, however, did not involve an "appeal" to the Board from a decision by an "enforcing officer" as generally provided by the statute, but rather a first-instance security-deposit hearing specifically authorized by § 5005(b)(5), which provides that such hearings "shall be set and held by the board in the same manner as provided

in subdivisions (1) through (4) of th[e] subsection," none of which contains the majority requirement. The trial court here also noted the express legislative policy that § 5005 "shall be construed most favorably to municipalities, its intention being to give them the fullest and most complete powers possible." *Id.* § 5009. We thus find no basis to conclude that the court erred in upholding the Board's review procedure.

¶ 22. Finally, landlord contends that several questions posed by the Board's clerk to the witnesses during the hearing violated the legislative grant of authority to the Board. Nothing in the record, however, supports landlord's contention that the Board "delegate[d] [its] substantive duties to the clerk" or that the clerk became a "substantive board member." The record shows that the hearing was conducted by a hearing officer duly appointed by the Board, who thereafter issued and signed a written decision. There is no claim or evidence that the clerk, apart from asking a few questions at the hearing, participated in any manner in the deliberations of the hearing officer or the formulation of the officer's findings, conclusions, and order. Accordingly, we find no error.

*Affirmed.*