2014 VT 125

**In re Carrigan Conditional Use and Certificate of Compliance**

**In re Carrigan Certificate of Occupancy**

**In re Carrigan Certificate of Compliance**

[117 A.3d 788]

Nos. 13-346, 13-347 & 13-348

Present: **Reiber, C.J., Dooley, Skoglund and Crawford, JJ.,**[1] **and Morse, J. (Ret.), Specially Assigned**

Opinion Filed November 21, 2014

Motion for Reargument Denied February 10, 2015

---

[1] Justice Crawford was present for conference on the briefs, but did not participate in this decision.

*David G. Carpenter* of *The Carpenter Law Firm, PLLC*, Middlebury, for Appellants.

*James W. Runcie* of *Ouimette & Runcie*, Vergennes, for Appellees John and Linda Carrigan.

*Adam L. Powers* of *Powers & Powers P.C.*, Middlebury, for Appellee Town of Addison.

¶ 1. **Dooley, J.** Neighbors Barbara Supeno and Barbara J. Ernst appeal the decision of the Superior Court, Environmental Division upholding the Town of Addison Development Review Board's (DRB) grant of certificates of occupancy for two detached decks and a conditional use permit for an enclosed deck to applicants Linda J. and John P. Carrigan for improvements to

applicants' seasonal camp on Lake Champlain. We affirm on the grant of the certificates of occupancy and reverse on the grant of the conditional use permit.

¶ 2. This dispute centers around a series of decks that applicants constructed on their property and the efforts of the Town in bringing the decks into compliance with the current zoning bylaws. Applicants' seasonal camp is located on Lake Champlain in the Town of Addison's Shoreland Residential (SR) District. The Town of Addison Zoning Regulations specify a minimum lot size of 2.5 acres and a minimum shoreline setback of 100 feet for buildings in the SR District. Town of Addison Zoning Regulations § 2.4 tbl.2.3 (2007) [hereinafter bylaws]. Applicants' lot measures 0.41 acres, and a large portion of the camp and its appurtenant structures is located within the 100-foot setback. The parties do not dispute that applicants' camp is a noncomplying structure under the bylaws.

¶ 3. Applicants purchased their property in 1984 and shortly thereafter built an attached, uncovered deck on the west side of the camp, facing Lake Champlain, adding ten feet in length to the footprint of the camp. Applicants then replaced an existing concrete platform, retaining wall, and set of stairs located on a slope down to the lakeshore, and added some decking behind the wall. As a result, applicants arguably had two decks within the setback area.

¶ 4. In 2003, applicants applied for and received a permit to build a roof over the uncovered deck that was attached to the west side of the camp. The 2003 permit memorialized the footprint of the camp as 800 square feet, a measurement used in subsequent permit applications. On the recommendation of their builder, applicants also enclosed the deck by adding walls, but they did not apply for a permit for the enclosure, as required by the regulations in effect at that time. In 2004, neighbors purchased property adjacent to applicants' camp. In 2012, neighbors complained about the enclosed deck, and the Town's zoning administrator (ZA) inspected the enclosure and informed applicants that a conditional use permit was required under the updated zoning regulations. The DRB granted the conditional use permit without conditions. The environmental court's affirmance of this conditional use permit is one of the three issues on appeal.

¶ 5. In 2010, applicants applied for and received a permit to construct a detached, "standalone deck" on the west side of the

camp, abutting the now-enclosed attached deck. The permit application did not disclose the presence of the decking that applicants had placed behind the retaining wall when they reconstructed the concrete platform and stairs in the 1980s. In 2011, neighbors notified the ZA that the standalone deck violated § 2.3(F)(7)(a) of the bylaws, which limits the number of detached decks an applicant can construct within the SR District. They argued that the decking behind the retaining wall constituted a "deck" and that therefore the standalone deck on the west side of the camp was not allowed under the bylaws. Upon instruction from the ZA, applicants removed the decking from behind the retaining wall to comply with the bylaws. The ZA later discovered that, when constructed, the standalone deck was in fact attached and advised applicants to cut through the connecting boards to create a freestanding structure. The DRB then granted a certificate of occupancy for this deck. The environmental court's affirmance of this certificate of occupancy is another one of the issues on appeal.

¶ 6. The controversy did not end there. Neighbors alerted the ZA that another attached deck, which applicants had constructed in 2004 on the south side of their camp, violated the zoning bylaws because it increased the camp's degree of noncompliance. After the DRB denied applicants' request for a variance, the ZA instructed applicants to detach the south deck from the camp and attach it to the west deck to create one large, L-shaped deck with an area of about 350 square feet, all detached from the camp. Applicants complied, and the DRB then granted a permit and certificate of occupancy for the combined deck. The environmental court's affirmance of this certificate of occupancy is the final issue on appeal.

¶ 7. Neighbors appealed to the environmental court the DRB's grant of certificates of occupancy for the west and south decks and its grant of the conditional use permit for the enclosed deck. The court consolidated the three separate appeals and held a de novo trial. It upheld the DRB's determinations on all three applications, concluding that: (1) once applicants had removed the decking from behind the lakeside retaining wall, the camp had only one detached deck as allowed by the zoning bylaws; (2) the L-shaped structure formed by joining the south and west decks constituted a single, detached deck; and (3) once applicants built the roof over their attached deck, that covered deck became part of their living space.

¶ 8. Neighbors filed this appeal, arguing that the environmental court erred in affirming the DRB's grant of certificates of occupancy for the detached decks and a conditional use permit for the enclosed deck. Neighbors also argue that the actions of the ZA and DRB directly contravene state and local policies protecting sensitive shoreland areas and lakes. Applicants counter these arguments and further claim that neighbors lacked party status to appeal the DRB's decisions to the environmental court. The Town of Addison filed a brief on the narrow question of whether the Town can administer its zoning bylaws by helping landowners correct violations and comply with the bylaws, rather than assessing fines for noncompliance.

¶ 9. We review the environmental court's legal conclusions de novo, *In re Grp. Five Invs. CU Permit*, 2014 VT 14, ¶ 4, 195 Vt. 625, 93 A.3d 111, and will uphold those conclusions if they are "reasonably supported by the findings." *In re Champlain Oil Co. Conditional Use Application*, 2014 VT 19, ¶ 2, 196 Vt. 29, 93 A.3d 139. We defer to the court's findings of fact and will uphold them "unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous." *Id.* We defer to the court's construction of a zoning ordinance and will uphold it unless it is "clearly erroneous, arbitrary, or capricious." *In re Beliveau NOV*, 2013 VT 41, ¶ 8, 194 Vt. 1, 72 A.3d 918.

¶ 10. ■ We also defer to a municipality's interpretation of its own zoning ordinance and will uphold it if it is reasonable and has been applied consistently. *In re Champlain Coll. Maple St. Dormitory*, 2009 VT 55, ¶ 10, 186 Vt. 313, 980 A.2d 273. Zoning ordinances "are in derogation of property rights and must be construed narrowly in favor of the landowner." *Champlain Oil Co.*, 2014 VT 19, ¶ 2.

¶ 11. At the outset, we consider applicants' claim that neighbors lacked party status to appeal to the environmental court. The court briefly addressed this issue and summarily dismissed it because applicants never filed a motion challenging neighbors' party status. See V.R.E.C.P. 5(d)(2) (stating that appellant claiming party status under 10 V.S.A. § 8504(b)(1), which applies to zoning appeals, is "automatically accorded that status" when notice of appeal is filed, unless court dismisses party based on motion). Neighbors claim party status under 10 V.S.A. § 8504(b)(1), which allows zoning appeals by an "interested person," as defined

by 24 V.S.A. § 4465, the statutory provision governing appeals from a municipal officer to a local zoning or development review board.

¶ 12. ■ ■ Applicants are correct that the question of standing generally may be raised at any time. *Bischoff v. Bletz*, 2008 VT 16, ¶ 15, 183 Vt. 235, 949 A.2d 420. In this case, however, we have a specific procedural rule "automatically" according interested party status to an appellant who claims status under 10 V.S.A. § 8504(b)(1), "unless the court otherwise determines on motion to dismiss a party." V.R.E.C.P. 5(d)(2). As the trial court found, applicants failed to file a motion to dismiss and therefore failed to preserve their objection to the appeal. See *City of S. Burlington v. Dep't of Corrections*, 171 Vt. 587, 590-91, 762 A.2d 1229, 1232 (2000) (mem.); *In re Denio*, 158 Vt. 230, 235-36, 608 A.2d 1166, 1168 (1992).

¶ 13. Turning to the merits, we first address whether the DRB erred in granting a certificate of occupancy for the detached, standalone deck applicants constructed along the west side of their camp. Neighbors argue that the DRB should not have approved the detached deck because the regulations allow only one structure within the shoreland setback and applicants already had a structure within the setback area: the concrete platform and stairs. Section 2.3(F)(7)(a) allows within the SR District's shoreland setback area "[o]ne detached deck, gazebo or similar structure per lot, which does not exceed 500 square feet." The DRB classified the landing and stairs as a "retaining wall" or "bulkhead" and concluded that it did not fall within the category of structures regulated under § 2.3(F)(7)(a).

¶ 14. ■ The interpretation of this provision turns on defining "deck, gazebo or similar structure." The DRB found that once applicants removed the decking and railing from behind the retaining wall, the structure no longer constituted a deck or similar structure. As commonly understood, decks and gazebos are structures with platforms (decking) and railings. It follows that "similar structure" as used in the provision applies to structures that also have platforms and railings. See *Vt. Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) ("[T]he latter general terms will be construed to include only those things similar in character to those specifically defined." (quotation omitted)).

¶ 15. ■ ■ Further support that the concrete landing and stairs alone are not categorized as a deck or similar structure under the bylaws is found in the provision at the end of § 2.3 that allows "[o]ther structures which provide visual or physical access to the lake (such as walkways, larger docks and boat ramps) to be constructed in the shoreland setback area subject to conditional use review." If the drafters had intended to include under § 2.3(F)(7)(a) all detached structures — and not just those similar to decks and gazebos — the second provision regulating these "other structures" would have been superfluous. See *Beliveau*, 2013 VT 41, ¶ 13 ("Generally, we do not construe a statute in a way that renders a significant part of it pure surplusage." (quotation omitted)). We therefore conclude that the DRB's interpretation of the bylaw is reasonable, and the environmental court did not err in affirming the DRB's grant of a certificate of occupancy for the west, detached deck, subject to the argument considered below that it was not truly detached.

¶ 16. ■ ■ Next, we address the issue of whether the DRB erred in granting a certificate of occupancy for the detached, L-shaped deck. The bylaws do not define "detached," so we are left with an ordinary understanding of the term. Something is detached if it is "not attached" or "separated." The Random House Dictionary of the English Language 541 (2d ed. 1987). A detached building has "no wall in common with another building." *Id.* When buildings share no common wall, they are freestanding and unsupported by the adjacent structure. The environmental court supported its finding that the L-shaped deck was detached with the ZA's testimony that the deck had "no physical connection that relied upon the principal structure for support and stability of the detached structure." As both the south and west portions of the L-shaped deck are freestanding and unsupported by the camp, we find the deck sufficiently detached.

¶ 17. ■ We recognize the difficulty in justifying the DRB's interpretation. A detached deck alongside the camp has the same effect on the setback area as an attached deck but is less structurally sound. It seems irrational to permit a nominally detached deck but prohibit an attached deck that otherwise appears identical to the normal observer. The ZA indicated in his testimony, however, that this interpretation allowing nominal detachment has been applied consistently. Furthermore, the Town's

policy of allowing detached decks creates a significant line-drawing challenge unless *all* detached decks are allowed, regardless of how nominal the detachment. The bylaw might have required a minimum distance between the detached deck and the structure, or it might have prohibited placing a detached deck alongside a dwelling; but the bylaw contains no such limitations, and we cannot read them in. *Smith v. Desautels*, 2008 VT 17, ¶ 18, 183 Vt. 255, 953 A.2d 620 ("[W]e do not read extra conditions into a statute unless they are necessary to make the statute effective."). We therefore conclude that the DRB's interpretation of the bylaw was reasonable, and the court did not err in affirming the DRB's grant of a certificate of occupancy for applicants' combined L-shaped deck.

¶ 18. Finally, we address the issue of whether the DRB erred in granting a conditional use permit for the enclosed deck. Section 3.7(B)(3) of the bylaws allows a noncomplying structure to be "enlarged, expanded or moved," provided that such modification "does not increase the degree of noncompliance." Section 7.2 of the bylaws defines "degree of noncompliance" as:

> The extent to which the footprint, height, or total area (volume) of a structure does not comply with the requirements of these regulations. For example, an addition, the installation of a dormer, or an increase in building height within the setback area would increase the degree of noncompliance.

Neighbors argue that applicants must seek a waiver or variance for the enclosure because it increased the camp's degree of noncompliance under the definition.[2]

¶ 19. The DRB's and the parties' interpretation of this regulation turns on the word "volume." Neighbors argue that volume, as

---

[2] Neighbors also argue that the DRB decision should be reversed because it failed to set forth findings of fact and conclusions of law pursuant to the site plan criteria and that applicants failed to submit a shoreland buffer management plan with their conditional use application. These arguments were not raised at the environmental court, and therefore we will not address them here.

They further argue that the DRB and environmental court decisions conflict with provisions of the Act Relating to the Establishment of Lake Shoreland Protection Standards. 2013, No. 172 (Adj. Sess.). This new statutory scheme for state regulation of certain lakeshore activities was enacted well after the events and decisions in this case. It does not directly control local zoning regulations or their enforcement and has no direct applicability here.

used here, refers to the *interior* volume of the building. As such, a building's degree of noncompliance would increase any time the interior volume — i.e., the amount of living space enclosed within the floor, walls, and roof of the building — increased. Under this reading, even though applicants' roofed deck already increased the footprint (length x width) and height of the building, once it was enclosed the total interior volume increased, thereby increasing the camp's degree of noncompliance.

¶ 20. Applicants, on the other hand, argue that volume is limited to *exterior* volume — i.e., the exterior space the building occupies. Under this reading, the footprint and height of the building already increased the camp's degree of noncompliance; the walls did not add to the existing footprint or building height and therefore did not increase the noncompliance any further. The DRB adopted this second reading of the term volume when it granted a conditional use permit for the enclosure, concluding that "the deck and roof as constructed had height, length and width, and therefore had volume. The addition of enclosure walls and windows did not increase any of those dimensions."

¶ 21. ▉ ▉ As noted above, we will defer to the DRB's interpretation of the bylaws, so long as it is reasonable and has been applied consistently, and to the environmental court's interpretation, unless it is clearly erroneous, arbitrary, or capricious. We interpret zoning ordinances according to the principles of statutory construction. *Champlain Oil Co.*, 2014 VT 19, ¶ 7. Therefore, to determine the reasonableness of the DRB's and the court's interpretation, we start with the plain language of the ordinance. See *In re Soon Kwon*, 2011 VT 26, ¶ 9, 189 Vt. 598, 19 A.3d 139 (mem.) ("In construing . . . [an] ordinance, we look first to the plain, ordinary meaning of the language; and we defer to the construction of [an ordinance] by the agency responsible for implementing it." (quotation omitted)).

¶ 22. On its face, the provision regulating noncomplying structures does not indicate whether volume refers to interior or exterior space. Because the bylaws do not define the term specifically, we look to the ordinary understanding of the term. *State v. Amsden*, 2013 VT 51, ¶ 19, 194 Vt. 128, 75 A.3d 612. Volume is defined as "the amount of space . . . that an object or substance occupies." Random House, *supra*, at 2131. While we believe that this definition supports neighbors' position, we do not

find it conclusive. On the one hand, we could say that because the unenclosed space between the floor and roof was exposed to the outside air the structure did not occupy that space. On the other hand, we hesitate to say that this space is not part of the structure, when it may have been used by applicants as actively before the walls were erected· as it is now, which is common particularly for seasonal camps.

¶ 23. Neighbors' strongest argument may be that the term "volume" is superfluous under the DRB's and environmental court's construction. Any increase in the exterior volume of a building naturally results from an increase in either the footprint or height of the building. As such, even without the presence of the term "volume" in the language of the bylaw, the roof extension would increase the degree of noncompliance by adding height[3] over the deck. On this point, however, we note that the bylaw provides a dormer as an example of a structural element that increases a building's degree of noncompliance. A dormer adds nothing to the footprint or height of a building and therefore increases only the interior volume.

¶ 24. We also look beyond the language of the bylaw to determine its meaning. Several courts in other jurisdictions have faced similar issues. These courts generally have concluded that absent language expressly prohibiting *any* enlargement of a nonconforming structure, additions and enclosures are permissible if they do not increase the footprint or height of the building. See *Raymond v. Zoning Bd. of Appeals*, 820 A.2d 275, 288-89 (Conn. App. Ct. 2003) (permanent deck enclosure); *Doyen v. Zoning Bd. of Appeals*, 789 A.2d 478, 485-86 (Conn. App. Ct. 2002) (addition over existing porch); *Town of Seabrook v. D'Agata*, 362 A.2d 182, 183 (N.H. 1976) (carport enclosure); *Clark v. Richardson*, 211 S.E.2d 530, 531 (N.C. Ct. App. 1975) (porch enclosure); *Nettleton v. Zoning Bd. of Adjustment*, 828 A.2d 1033, 1039 (Pa. 2003) (two-story addition over existing first-story addition); *Donaghy v. Bd. of Adjustment*, 2002 WY 150, ¶¶ 12-13, 55 P.3d 707, 713 (patio enclosure).

¶ 25. The Connecticut Court of Appeals discussed this "window of tolerance" for expansions in *Doyen*, where it analyzed a town ordinance that allowed nonconforming structures to be enlarged in

---

[3] Although not addressed in the briefs, the roof extension was 1.5 feet higher than the existing roof, adding to the overall height of the building.

compliance with the zoning regulations. In upholding an application for an addition atop a roofed deck, the court noted that "[t]he preexisting footprint, which includes the deck, creates its own legal nonconforming setback." *Doyen*, 789 A.2d at 485-86. Because the second-story addition did not encroach any further into the setback area, the court held that it was a permissible enlargement of the structure. *Id.* at 486.

¶ 26. Although these decisions tend to support applicants' position, they are of limited assistance because none of the ordinances at issue prohibited an increase in *volume* within the setback areas. For a similar reason, we find limited assistance in an earlier environmental court decision with similar facts that interpreted the term "volume" in the Town of Ludlow's zoning ordinance to mean the exterior volume of the building and not the interior space.[4] *In re Curry*, No. 222-10-07 Vtec, slip op. at 6 (Vt. Envtl. Ct. Feb. 5, 2009), https://www.vermontjudiciary.org/GTC/Environmental/Opinions.aspx. The court discussed Ludlow's ordinance at some length when considering whether an enclosed porch would constitute an expansion of the nonconforming structure, but ultimately relied upon another provision in the ordinance that expressly stated that a roofed porch is considered part of the structure for setback purposes. *Id.* As such, the court concluded that "[t]his work does not constitute an expansion or enlargement to a nonconforming structure under [the ordinance] if it is entirely located within the volume of space that is *already* defined as being part of the existing nonconforming structure." *Id.* The bylaws at issue here have no similar provision.

¶ 27. The one decision on point, *Fielder v. Town of Raymond*, No. AP-01-16, 2001 WL 1711247 (Me. Super. Ct. Oct. 5, 2001),

---

[4] Neighbors urge us to rely on another environmental court decision, *In re Carrigan Waiver & Variance Applications*, No. 38-2-10 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Jan. 13, 2011), https://www.vermontjudiciary.org/GTC/Environmental/Opinions.aspx, not only because they believe it supports their position but also because it involves the same property at issue here. In their view, the earlier decision established the binding law of the case in this proceeding. This decision is unhelpful. It dealt with a proposal to build an addition to the camp, which would have increased the building's footprint and overall internal and external volume. The court never needed to consider the term "volume." Even if this case did help neighbors, the decision would not constitute the law of the case because that doctrine governs only subsequent proceedings in the same case. *Coty v. Ramsey Assocs.*, 154 Vt. 168, 171, 573 A.2d 694, 696 (1990). The earlier decision of the environmental court involved a separate and different development proposal and permit application and therefore was not rendered in the same case.

addressed the term "volume" and reached a conclusion that supports neighbors' arguments here. There, the Maine Superior Court considered an application to enclose a roofed deck in the town's shoreland setback area. The applicable ordinance prohibited structures in the setback area from expanding "toward the water body" or increasing the "floor area or volume by 30% or more." *Id.* at *2. The court held that the enclosure would increase the volume of the building although not in excess of the 30% limit. *Id.* at *4.

¶ 28. The overarching consideration — and indeed the most important consideration — in our interpretation of the term "volume" is the amount of deference we can give to the DRB and the environmental court. For the reasons we state below, we conclude that neither decision is entitled to deference.

¶ 29. We will defer to the DRB's interpretation if it is reasonable and has been applied consistently. The DRB concluded that because the walls did not add to the footprint or height of the building it already had volume and did not intrude any further into the setback area. The evidence in support of this interpretation was supplied by the ZA's testimony, which indicates that this interpretation is based not on sound reasoning but merely on the conclusion that the term "volume" is too ambiguous to be enforced. The ZA acknowledged that, according to the bylaw, an increase in volume would increase the degree of noncompliance. He admitted, however, that he "felt it was careless wording" and that the planning commission was "unclear about it" and "agreed that [the term 'volume'] should not have been in there." From this, we cannot conclude that the DRB's interpretation is reasonable.

¶ 30. ■ We also cannot conclude that the interpretation has been applied consistently. To the extent we have evidence of consistency, it is of nonenforcement of the bylaw provision and not of interpretation. As we have stated previously, "[z]oning ordinances must provide . . . appropriate conditions and safeguards to guide the decisionmaker." *In re Pierce Subdivision Application,* 2008 VT 100, ¶ 20, 184 Vt. 365, 965 A.2d 468 (quotation omitted). While the bylaws here may provide sufficient standards with respect to noncomplying structures, the ZA's nonenforcement of those standards renders his ad hoc attempts to bring violations retroactively into compliance susceptible to the type of inconsis-

tent and arbitrary application that we try to avoid.[5] See *id.* ¶ 19 ("[A]d-hoc decision-making denies . . . due process of law." (alteration in original) (quotation omitted)). We therefore cannot defer to the DRB and its construction.[6]

¶ 31. For a different reason, we cannot give deference to the environmental court's decision. The court neither interpreted the bylaw nor provided any guidance on the applicability of the term "volume." In reaching its decision to affirm, the court concluded only that "[the 2003] permit authorized the construction of [the] roof and . . . enclosing that area under [the] roof to be part of their living space." Additionally, the court declined to answer neighbors' Question 7 regarding whether the enclosed deck violates the relevant permits or bylaws, stating that it would not issue an advisory opinion on a matter not specifically before the court.

¶ 32. The court's rationale is difficult to understand. Applicants sought to "add roof to existing deck," not to build walls and enclose the deck. The permit as issued approved only "the addition of a 10' by 20' peaked roof over the open porch." Indeed, the ZA recognized that the existing permit was insufficient to allow the walls and required applicants to seek a corrected permit. This required conditional use approval by the DRB. Squarely before the environmental court was whether the DRB erred in granting the conditional use permit because the addition of the walls was an expansion of noncompliance within the setback. We cannot see how the court could rule that answering this exact question would be an "advisory opinion," or that the 2003 permit authorized enclosing the deck. We defer to the environmental court's interpretation of zoning ordinances because of its expertise, *In re Bjerke Zoning Permit Denial*, 2014 VT 13, ¶ 22, 195 Vt.

---

[5] Both the Town and applicants argue that the Town's philosophy of zoning administration, which seeks to help landowners correct violations and comply with the bylaws, rather than punish them, is lawful and should be encouraged. We are not holding otherwise. We also are not suggesting that the Town has been selective about when and against whom it enforces the bylaw. We merely caution that the selective nonenforcement of the term "volume" in the bylaw, coupled with this method of retroactive compliance, *may* open the door for inconsistent application, which is why we do not give deference here.

[6] As noted above, the roof extension was built higher than the existing roof by over a foot. The fact that the ZA took no action with respect to the as-built extension also undermines the deference we will extend.

586, 93 A.3d 82, but where, as here, the court reaches its decision without actually interpreting the governing bylaw and based on a misunderstanding of the issue before it, we accord no deference.

¶ 33. ▮ Our final conclusion is perhaps the most important. Neighbors argue that the interpretation of the bylaws must take into account the purpose of the Addison Town Plan to "encourage the long-term environmental protection of Lake Champlain and its shoreland," Addison Town Plan 20 (2009), as well as its restatement in the bylaws with respect to the SR District.[7] Bylaws § 2.4 tbl.2.3(A). In a town with a very restrictive policy against expansion of noncomplying structures, applicants have turned a twenty-by-thirty-foot camp with a ten-foot deck into a twenty-by-forty-foot camp with a ten-foot deck extending in the direction of Lake Champlain and entirely within required shoreland setback. It is almost certain that once one lakefront deck is enclosed on a seasonal camp, another new deck will be built. While the individual steps reaching this result may appear justified under the relevant bylaws, the final result is inconsistent with their intent and purpose.

¶ 34. ▮ Interpreting the language of §§ 3.7(B)(3) and 7.2 of the bylaws as consistent with their purpose, particularly with respect to the SR District, we conclude that the enclosure of applicants' deck increased the volume of the structure and therefore increased the degree of noncompliance. We therefore conclude that the environmental court erred in affirming the DRB's grant of a conditional use permit for applicants' enclosed deck.

¶ 35. Finally, beyond the specific issues, neighbors allege bad faith and wrongdoing on the part of applicants and the Town. In making these allegations, neighbors provide no evidence to support any misrepresentation or attempts to bypass zoning requirements on the part of the applicants. Rather, this case involves applicants trying to make improvements on their seasonal camp,

---

[7] Applicants and the Town oppose consideration of the town plan because it is only advisory and has "no direct regulatory effect." *In re Meaker*, 156 Vt. 182, 185, 588 A.2d 1362, 1364 (1991). We note, however, that town plans, although advisory, are intended to guide the legislative body in drafting the bylaws. *Kalakowski v. John A. Russell Corp.*, 137 Vt. 219, 225, 401 A.2d 906, 910 (1979). Thus, a town plan can be helpful in interpreting a zoning ordinance because we must adopt an interpretation that implements the plan's purpose. *Id.* That is exactly how we are using the language of the plan and statement of purpose in the bylaws.

and the ZA attempting to correct, rather than penalize, applicants for their indiscretions. While we hold that the conditional use permit granted to applicants was in error, we do so on the narrow issues presented below and raised in this appeal.

*Affirmed on the grant of certificates of occupancy for the detached decks. Reversed on the grant of a conditional use permit for the enclosed deck.*

