*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-150

SEPTEMBER TERM, 2015

| | |
|---|---|
| Sheryl Tepper and Stephen Kesman | } APPEALED FROM: |
| | } |
| | } Superior Court, Rutland Unit, |
| v. | } Civil Division |
| | } |
| | } |
| Patricia Garcia | } DOCKET NO. 364-6-14 Rdcv |

Trial Judge: Cortland Corsones

In the above-entitled cause, the Clerk will enter:

The parties to this landlord-tenant dispute appeal from a superior court judgment awarding landlords damages, attorney's fees, and costs totaling $16,877.50. In her pro se appeal, tenant contends the court erred in: (1) awarding damages notwithstanding the court's finding that landlords violated the statutory provision governing notice of its intent to retain the security deposit; (2) denying tenant's request for a continuance; (3) awarding attorney's fees; (4) awarding damages for new carpeting; and (5) making certain findings that were not supported by the evidence. In its cross-appeal, landlords contend the court erred in: (1) finding that it violated the security-deposit statute; and (2) declining to award damages to repair the kitchen cabinets and re-paint the unit. We affirm.

As found by the trial court, the facts may be summarized as follows. In October 2012, plaintiffs Sheryl Tepper and Stephen Kesman (landlords) and defendant Patricia Garcia (tenant) entered into a one-year lease agreement for the property, a condominium unit in Rutland. The rent was $800 per month for the first six months, and $1600 for the last six months.[1] Tenant provided a security deposit of $1600. The lease permitted tenant to have such pets as the condominium association allowed, but provided that, "[s]hould [tenant] elect not to purchase, the premises shall be vacated free of any evidence of [tenant's] maintenance of pets." The court found that, shortly before tenant moved in, the unit was "in good overall condition" but was in need of "some cosmetic work."

About a year later, the parties executed an amendment to the lease agreement, extending the lease for bi-monthly terms running to mid-April 2014. The rent for each bi-monthly period was $2600. The amendment also stated: "Breach of any provision of the within stated Leases(s) by either party shall entitle the substantially prevailing party to costs and attorney's fees should either party have reason to seek legal counsel and/or court proceedings."

---

[1] The parties also entered into a purchase and sale agreement at the time, providing tenant with the option to purchase if she notified landlords of her intention to purchase by July 15, 2013. Tenant ultimately decided not to exercise the purchase option.

In March 2014, landlords decided not to extend the lease, hoping to sell the unit. A dispute concerning tenant's termination date led to landlords filing an action for possession of the property in June 2014. The parties negotiated an extension allowing tenant to remain in possession until August 2014. Tenant thereafter filed an answer and counterclaim, and landlords filed an amendment to the complaint to include a claim for damages to the unit. A two-day court trial was held in November and December 2014, and the court issued a written ruling in March 2015.

The court found that, for most of her time in the unit, tenant had nine cats and seven litter boxes, and that at some point in time, one or more of the cats started urinating and defecating in areas throughout the unit. In the spring of 2014, while showing the unit to a potential purchaser, landlords noted a strong odor of cat urine and observed cat feces all over the floor. Later, after tenant vacated, landlords observed that the carpeting was soaked with cat urine and that cat feces remained scattered throughout the unit. The court found that, as a result, it was necessary to remove all of the carpeting and padding for a cost of $600. The court also found that the "remaining necessary clean-up" was too much for normal cleaning services; that landlords engaged a specialized contractor to clean the property; and that its work and charges of $3500 were "reasonably necessary" to address the situation left by tenant and her cats.

Landlords thereafter engaged a builder to inspect the unit and provide an estimate of repair costs due to cat damage. The court found that the builder's estimate of $4900 to replace the carpeting and $450 to replace the flooring was necessary due to cat damage; that $1220 to replace the baseboards was necessary due to the cat odor; that $220 to replace a countertop edge due to gnawing or clawing was necessary; and that $250 to repair a hole in the upstairs shower wall that was not there when tenant moved in was also reasonable and necessary. The court also found that $5380 required to re-paint the unit was not due to cat damage, but attributable to landlords' "renovating the apartment for the first time in 30 years"; that $5715 to replace the cabinets similarly could not be attributed to cat damage; and that landlords had not proven that $400 to replace the screens was due to cat damage.

The court concluded that tenant had violated the lease provision requiring that the unit be "vacated free of any evidence of Purchaser's maintenance of pets," and that landlords were entitled to damages for the reasonable repairs attributable to the cat damage, plus $250 to repair the shower, for a total of $11,140. The court further found that landlords had incurred reasonable attorney's fees of $7021.25, as well as court costs of $316.25, to which it was entitled under the provision of the amended agreement providing that a breach of the lease by either party would entitle the prevailing party to costs and attorney's fees in any court proceeding.

With respect to tenant's claims about problems with the unit during the tenancy, the court found that landlords had responded to each of tenant's complaints by repairing or replacing the appliance or condition in question. It thus found no evidence to support tenant's counterclaims for breach of the warranty of habitability, misrepresentation, compensation for repairs that she had allegedly performed, or emotional distress.

The court found that tenant had raised a valid claim concerning the security deposit. Under the provisions of 9 V.S.A. § 4461(e), a landlord who fails to return a security deposit within fourteen days of the tenant's vacating the unit "forfeits the right to withhold any portion of the security deposit," and is subject to liability for double the amount wrongfully withheld and costs and attorney's fees if the failure is willful. The court here found that landlords were well

2

aware that tenant had vacated the unit on August 18, 2014, but failed to send the required withholding notice until September 18, 2014. The court first ordered landlords to return the security deposit to tenant, which they did. The court then determined that the failure was willful, and accordingly awarded tenant $1600 in addition to the returned deposit. Because defendant represented herself[2], the court awarded her no attorney's fees. Deducting the second security deposit amount from the damages, attorney's fees and costs resulted in a net judgment to landlords of $16,561.25. These separate appeals followed.

"[W]e will uphold the court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them." Mann v. Levin, 2004 VT 100, ¶ 17, 177 Vt. 261. The trial court's legal conclusions we review de novo. Charbonneau v Gorczyk, 2003 VT 105, ¶ 2, 176 Vt. 140.

Tenant appears to raise several discrete claims. She contends that "there was no [lease] provision that was breached" which would entitle landlords to attorney's fees. The court found, however, that the damage to the carpet, floor, and part of the cabinets violated the provision requiring that "the premises . . . be vacated free of any evidence of [tenant's] maintenance of pets." This was a reasonable application of the provision, and the evidence amply supports the finding.

Tenant further contends that landlords' violation of 9 V.S.A. § 4461(e) "should result in the landlords no longer being able to pursue any claim for damages." The argument lacks merit. As we have observed with respect to this particular provision, "[t]he statute states a consequence of not complying with its requirements"; that is, the landlord forfeits the deposit or, if the breach was willful, forfeits twice the deposit amount. In re Soon Kwon, 2011 VT 26, ¶ 17, 189 Vt. 598 (mem.). The statute does not bar landlords from seeking their damages under the lease or other statutory provisions, and we are not at liberty to read into the statute additional consequences that the legislature left out.

Tenant asserts that the court was wrong to award the cost for new carpeting in light of its finding that the unit had not been upgraded for many years. Landlords' flooring contractor testified under cross-examination that the carpet and underflooring were so saturated with cat urine that it was difficult to estimate the carpet's age. The realtor who listed the property for landlords testified that, while it needed some "cosmetic upgrades" before tenant moved in, it was "overall [in] very good . . . livable condition." The evidence was thus sufficient to support the court's finding that it was necessary to install new carpet to replace what the evidence showed was damaged beyond repair, and tenant has not shown that its finding was clearly erroneous due to the age or condition of the existing carpet. See Langlois v. Town of Proctor, 2014 VT 130, ¶ 41 (noting that for damages to real property, "if the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation") (quoting Bean v. Sears, Roebuck, & Co., 129 Vt. 278, 282 (1971)).

Tenant also contends the court erred in denying her request for a continuance. The record shows that tenant appeared on the first day of the hearing with a doctor's note indicating that she

---

[2] Tenant says she was represented initially with respect to her attempt to recover the security deposit, but agrees that she offered no evidence of her representation costs.

3

had a viral infection, and requested a continuance. Landlords' attorney objected that she had not been forewarned and landlords had three witnesses on hand who would not be available on the later date that tenant proposed, and represented that their testimony would be brief. The court allowed the witnesses to testify, and defendant cross-examined them. The hearing continued on a second day several weeks later, when tenant presented her case. She did not seek to recall the witnesses who testified on the first day. Under the circumstances, we conclude that the court acted reasonably in allowing the two witnesses and granting the continuance only for further testimony. See Finkle v. Town of Rochester, 140 Vt. 287, 289 (1981) ("A decision to grant or deny a continuance is a discretionary matter and will not be disturbed unless there is shown an abuse of discretion which causes prejudice.")

Finally, in an addendum to her brief, tenant lists nineteen findings that she claims were unjust or erroneous.[3] To the extent we can understand her claims, they involve instances where tenant is disputing landlords' evidence. For example, tenant argues that the cats could not have damaged the counter because she did not allow them to jump on to the counter. The trial court, and not this Court, decides the credibility of witnesses, and we cannot upset findings on this basis. Accordingly, we do not separately address the claims.

In their cross-appeal, landlords contend the court erred in finding that they failed to comply with the security-deposit statute. Landlords assert that they provided notice of their intent to withhold the deposit as early as June 16, 2014, when they filed the complaint for writ of possession which contained a sentence stating that "[p]laintiffs reserve the right to bring additional causes of action resulting from damage to the premises caused by [d]efendant and to apply security deposit in accordance with 9 V.S.A. § 4461."

The claim is unpersuasive. The statute sets forth the exact procedures for compliance, providing that the landlord must "return the security deposit along a written statement itemizing any deductions to a tenant within 14 days" of the date the tenant vacates, 9 V.S.A. § 4461(c), and further providing that "[t]he landlord shall comply with this section by hand-delivering or mailing the statement and any payment required." Id. § 4611(d). We have held that strict compliance with the statute is required, and that "[w]e cannot allow an alternative method of giving notice." In re Soon Kwon, 2011 VT 26, ¶ 17. The statement in landlords' complaint for writ of possession plainly did not meet the statutory requirements.

Landlords also contend the court erred in applying the double-recovery remedy under the section of the statute providing that, "[i]f the failure is willful, the landlord shall be liable for double the amount wrongfully withheld." 9 V.S.A. § 4461(e). Landlords contend the error was not willful, and that no amounts were "wrongfully withheld" since tenant was later found to be liable for substantial damages. The court's finding that the failure was willful was supported by the evidence showing that landlords fully understood their obligation under the statute and simply failed to follow through. See In re Chase, 2009 VT 94, ¶ 26, 186 Vt. 355 (willful generally connotes intentionally or by design). Furthermore, the reference to amounts "wrongfully" withheld refers to landlords' non-compliance with the statutory notice requirement, not to their ultimate right to offset the deposit against any damages that tenant may have caused. Accordingly, we find no error.

---

[3] She also included some photographs that were not offered below. We cannot consider the additional evidence on appeal.

4

Landlords also challenge the court's refusal to award damages for the costs to replace the kitchen cabinets and re-paint the unit. The record evidence as a whole supports the decision. With respect to the cabinets, landlords' cleaning contractor testified that landlords "might want to consider replacing" them because of cat odor, and landlords' building contractor also noted a cat smell in the lower cabinets and opined that replacing the lower cabinets would probably necessitate replacing the upper cabinets to maintain "a consistent look in the kitchen." The evidence of any substantial cat damage to the cabinets was fairly weak, and the court could reasonably conclude that their replacement was as much attributable to age as to tenant. When asked about the necessity to repaint the walls, landlords' building contractor similarly observed that he "imagine[d] a case be made for that also," but again the trial court could reasonably conclude that the necessity to make the unit marketable for sale was the principal basis for the repainting. Accordingly, we discern no clear error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice