Filed 03/24/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-SC-02400

---

Stephanie Burdo v. Handy's Hotels and Rentals LLC

---

DECISION AND ORDER

Plaintiff Stephanie Burdo brought this action against her former landlord, Defendant Handy's Hotels and Rental's LLC ("Handy's") for return of money from her prior apartment. In particular, Burdo requests $2,140, consisting of her $925 security deposit doubled under 9 V.S.A. §4461(e), $200 for carpet cleaning and $90 in court costs. The court held trial on January 23, 2026, and March 11, 2026. Burdo represents herself and Handy's has counsel.

## I.    Findings of Fact

Based on a preponderance of credible evidence admitted at trial, the court makes the following findings, focusing on the matters most relevant to Burdo's claim.

Burdo and Handy's had a written lease for an Essex Junction apartment. The lease provided for a tenancy term of July 15, 2023, to June 30, 2024, after which her tenancy became "a month-to-month tenancy with all of the same terms and conditions,"[1] meaning "all the terms and conditions of this Agreement will continue for successive terms of one-month each until Tenant[] terminate[s] their month to month tenancy by giving a 60 day written notice on or before the 1st of the upcoming month."[2] The lease further required: "**Tenants must have the carpet professionally cleaned when vacating the premises and provide Landlord with a copy of the invoice.**"[3]

Around June 7, 2025, a fire broke out from Burdo's apartment, impacting the 30-unit building. As a result, Defendant's property manager, Shawn Handy, asked Burdo to find a new place to live.

---

[1] (Ex. 1 § 3.) The court cites to documentary evidence for convenience. It bases its findings on all the evidence presented, including testimony the court deemed credible and persuasive.

[2] (*Id.*)

[3] (*Id.* § 6 (emphasis in original).)

On July 15, 2025, Burdo notified Handy's through their tenant-texting app that she intended to vacate on August 15, 2025.[4] The next day, Handy's acknowledged Burdo's notice.[5] Burdo vacated the apartment on August 16, 2025, leaving the keys in the apartment, as Handy's had instructed in a telephone conversation.

Handy's reminded Burdo of the lease obligation to have the carpet professionally cleaned.[6] That requirement exists in all Handy's leases. After exchanging further texts regarding which carpet-cleaning service to use and scheduling logistics around Burdo's move-out and when the cleaning could take place, Burdo through text and phone call confirmed with Handy's that she had vacated the apartment on August 16, 2025.[7] Burdo left the apartment clean, specifically vacuuming the carpets.[8] The carpet cleaners completed their service on August 22, 2025, for which Burdo paid the cleaners $200.

Handy testified that he does not consider a lease "closed out" until after completion of the professional carpet cleaning required by the lease. Handy's imposes that requirement on all tenants, regardless of the cleanliness of the unit they leave behind. He also noted the lease requirement that tenant provide 60 days' notice on the first of the month.[9] Yet he agreed that Handy's staff acknowledged Burdo's 30-day notice for a mid-August move-out.

Around September 13, 2025, Burdo received from Handy's a letter dated August 31, 2025, and check dated September 3, 2025.[10] The letter and check indicated Handy's had returned $925 to Burdo, representing her $1,850 "[t]otal of all deposits paid"[11] less $925 for "rest of August rent – tenant was supposed to vacate 08/15. Did not vacate on 8/15, carpets were not able to be completed until 8/22."[12] Burdo had previously paid $925 rent for the first half of August 2025.

## II.    Discussion

The Vermont Supreme Court has emphasized that it holds landlords to "'punctilious compliance with all statutory eviction procedures.'" *In re Soon Kwon*, 2011 VT 26, ¶¶ 14-15, 189 Vt. 598 (citation omitted). This court has found no decision in which the state's highest court

---

[4] (Ex. 2, at 4.)

[5] (*Id*. at 5.) Handy testified as much as well.

[6] (*Id*.)

[7] (*Id.* at 9-10.)

[8] (Ex. 7 (showing fresh vacuum tracks on the carpets).)

[9] (Ex. 1 § 3.)

[10] (Ex. 4.)

[11] The lease required a security deposit of $1,850. (Ex. 1, § 6.)

[12] (*Id.* at 2.)

has elaborated on the meaning of "punctilious compliance." It interprets the phrase with its plain and unforgiving denotation and connotation.

A landlord who fails to "return the security deposit with a statement within 14 days" from "the date the tenant vacated the dwelling unit, provided the landlord received notice from the tenant of that date" "forfeits the right to withhold any portion of the security deposit." 9 V.S.A. § 4461(c), (e). A "willful" failure makes landlord liable for twice the amount "wrongfully withheld, plus reasonable attorney's fees and costs." *Id.* § 4461(e). Here, "willful" means intentional. *See In re Chase*, 2009 VT 94, ¶ 26, 186 Vt. 355 ("The word 'wilful' [sic] though given different definitions under different circumstances cannot well mean less than intentionally and by design.") (citation omitted).

The undisputed evidence shows Burdo vacated the apartment on August 16, 2025, leaving her keys in the apartment as instructed by Handy's. The uncontroverted evidence shows Burdo provided notice to Handy's that she vacated on that date. Her unchallenged photos show the apartment clean and empty. Fourteen days from August 16, 2025, lands on August 30, 2025. Handy's August 31, 2025 cover letter, September 3, 2025 check and Burdo's September 13, 2025 receipt of both all come after the expiration of Handy's statutory 14-day period. Under § 4461(e), it forfeited its right to withhold any amounts from Burdo's $1,850 security deposit.

The record in this case shows that Handy's made an intentional decision regarding the timing and amount of Burdo's partial security deposit refund. It asserts that Burdo did not terminate her tenancy until August 22, 2025, after completion of the professional carpet cleaning required by the lease, even though it acknowledged her August 16, 2025 physical departure from the apartment. No legal authority supports their business decision to tie a tenant's vacation of the premises to their completion of a professional carpet cleaning that can only take place after a tenant leaves. Handy's chose to calculate its 14-day period from August 22, 2025. That choice does not change that it made an intentional and willful decision as a matter of law to use August 22, 2025, as the start date to return Burdo's security deposit under 9 V.S.A. § 4461(e). Handy's actions entitle Burdo to double the amount of her security deposit, $3,700, plus costs of $90. *Id.*

During the second day of the hearing, the court asked the parties about the appropriateness of the $200 cleaning fee under the lease. Section 4461(b) of Title 9 does not authorize the landlord to deduct such a fee from the security deposit. That did not happen here. Burdo paid it directly as a separate obligation under her lease. The court does not find anything in Title 9 which prohibits such a lease provision in this case.

3

### III.    Order

For the reasons discussed above, the court finds for Burdo, in the amount of$3,790, representing her $1,850 security deposit, doubled to $3,700, plus her allowed costs of $90 under 9 V.S.A. § 4461(e).  The court will issue written judgment in that amount.

Electronically signed pursuant to V.R.E.F. 9(d) on March 24, 2026.

Colin Owyang
Superior Court Judge

4