STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 6-1-20 Vtec

| | |
|---|---|
| Lonie Parker DBA Porky's Bkyd BBQ SP & NOV | DECISION ON MOTION |

Rita Booska (Neighbor)[1] appeals two decisions issued by the Town of New Haven Development Review Board (DRB) to Lonie Parker d/b/a Porky's Backyard BBQ (Applicant), located at 7404 Ethan Allen Highway in New Haven, Vermont (the Property). On December 16, 2019, the DRB issued decision No. 2019DRB-07-SP approving with conditions Applicant's request for amendment or clarification of prior site plan permits (Amended Site Plan Approval). Also on December 16, 2019, the DRB issued decision No. 2019DRB-09-AP concerning Applicant's municipal appeal of a Notice of Violation (NOV) issued by the New Haven Zoning Administrator (NOV Decision). Presently before the Court is Applicant's motion to dismiss or, in the alternative, for summary judgment as to Neighbor's Statement of Questions, pursuant to V.R.C.P. 12(b)(1) and 56(b), respectively. Also before the Court is Neighbor's motion for enlargement of time, pursuant to V.R.C.P. 56(d). Applicant is represented by Jeremiah J. Ouimette, Esq. Neighbor is represented by Kevin E. Brown, Esq.

Although it is not before the Court in this decision, Neighbor has also appealed the DRB's issuance of a Certificate of Occupancy for the Property (CO appeal). See Lonie Parker dba Porky's Barbeque CO, No. 45-5-20 Vtec, slip op. at 1 (Vt. Super. Ct. Env. Div. May 27, 2020) (Walsh, J.); see also In re: Lonie Parker dba Porky's Backyard Barbecue, No. 2020-DRB-04-AP Booska, Findings and Decision at 1 (Town of New Haven Dev. Review Bd. May 21, 2020).

As a threshold matter, we address an error in procedure. Neighbor improperly joined two DRB decisions in this one appeal. While this Court has jurisdiction over Neighbor's appeal of the

---

[1] Neighbor resides on Ethan Allen Parkway directly across from the Property. 24 V.S.A. §§ 4465(b)(3), 4471(a) (defining an "interested person").

Amended Site Plan Approval (Site Plan appeal) and her appeal of the NOV Decision (NOV appeal), there exists no mechanism by which to consolidate them into the same proceeding.[2]  See V.R.C.P 42(a) (defining consolidation as bringing together multiple proceedings into a single action, which would also require consent of the parties); see also V.R.E.C.P. 2(b) (defining coordination as a tool of expedience whereby multiple matters are heard together but maintain their separate docket numbers); see also Reporter's Notes, V.R.E.C.P. 2 ("[V.R.E.C.P. 2(b) ] does not address full consolidation of proceedings, which by virtue of V.R.C.P. 42(a) may be ordered only with the consent of the parties."); V.R.E.C.P. 5(a) (delineating appeals procedure and jurisdiction).  We have authority to coordinate appeals, but not to consolidate them.  See APC Property LLC dba Burlington Bedrooms CU & SP, Nos. 71-6-15 Vtec and 116-9-15 Vtec, slip op. at 1 (Vt. Super. Ct. Env. Div. Jan. 21, 2016).

This Court has jurisdiction over NOV appeals, pursuant to 24 V.S.A. § 4451 and V.R.E.C.P 5.  The role of this Court in an NOV appeal is limited to deciding whether there was a violation.  See Town of Georgia v. King, No. 105-6-10 slip op. at 5 (Vt. Super. Ct. Envtl. Div. Aug. 25, 2011) (Durkin, J.) ("An argument going to whether there was a violation could have been raised in an appeal of the NOV itself, but cannot now be raised in this enforcement action brought by [the municipality]").  This Court also has jurisdiction over appeals from the decisions of municipal panels, including site plan approvals, under 24 V.S.A. § 4471 and 4472(a); see City of St. Albans v. Arsenault, No. 38-3-19 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Sept. 18, 2019) (Durkin, J.).  Both the NOV and Site Plan decisions are bound by 24 V.S.A. § 4472(d), which states that if the interested party does not file a timely appeal with this Court, the decision of the municipal panel is final and incontestable. 24 V.S.A. § 4472(d).  Here, both decisions were timely appealed, but Neighbor improperly consolidated the appeals into one proceeding.

This procedural misstep represents a unique form over substance conundrum.  The Court has therefore decided to address both the NOV and Site Plan appeals as though they were filed

_____

[2] This Court's authority to coordinate multiple proceedings, where the same or significantly related matter has resulted in separate hearings or appeals, was instituted in order to "promote expeditious and fair proceedings and avoid unnecessary costs or delay."  See V.R.E.C.P. 2.

2

separately but coordinated for resolution.[3]  Though challenges to two decisions are before us, there is one Statement of Questions.  Our discussion of the NOV appeal will address the questions within the Statement of Questions which properly relate to the NOV appeal.  Our discussion of the Site Plan appeal will address the questions which properly relate to the Site Plan appeal.  If a question relates to both the NOV and Site Plan decisions, we will address it in both matters.

### Legal Standard

Applicant moves to dismiss a number of Neighbor's Questions as outside this Court's subject matter jurisdiction or as moot.  See V.R.C.P. 12(b)(1) (governing motions to dismiss for lack of jurisdiction); In re Goddard Coll. Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.).  In reviewing such motions, we accept as true all uncontroverted factual allegations and construe them in a light most favorable to the nonmoving party (here, Neighbor).  Jolley Assoc. Car Wash, No. 179-12-13 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Mar. 19, 2014) (Walsh, J.); Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.

Applicant also moves in the alternative for summary judgment.  Here, Neighbor has treated Applicant's motion as one requesting summary judgment.  Thus, we have done the same where appropriate, and we determine that the parties in this appeal have had reasonable opportunities to respond to Applicant's motion as one for summary judgment.  By treating the requests for dismissal as requests for summary judgment, we are able to take into account the information offered by each party that goes outside of the text of the questions themselves.  See V.R.C.P. 12(b)(6) ("If, on a motion . . . to dismiss for failure . . . to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."); see also In re Bibby 5-Lot Final Plat Subdivision & Waiver Application, No. 189-11-10 Vtec, slip op. at 2–3 (Vt. Super. Ct. Env. Div. Mar. 2, 2012) (Durkin, J.).

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3] While this Court could consider dismissing this case on grounds of improper procedure, we felt a more equitable solution would be to address and resolve the issues before us because Applicant's motion may be dispositive for issues arising under challenges of both the NOV and SP decisons.

matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

Before considering whether dismissal or summary judgment is warranted for individual Questions, we clarify the scope of our jurisdiction and authority in this de novo appeal. We are limited to addressing those issues that the DRB had the authority to address when considering the application before it. See In re Torres, 154 Vt. 233, 235–36 (1990); V.R.E.C.P. 5(g).

**Factual Background**

We recite the following facts, which we understand to be undisputed unless otherwise noted, based on the record now before us and for the sole purpose of deciding the pending motion(s). The following are not specific factual findings with relevance outside of this summary judgment decision. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1.  The DRB approved Site Plan Application No. 2018DRB-08-SP (2018 Site Plan Approval), with conditions, for 7404 Ethan Allen Highway (the Property) on August 20, 2018. The Property is located in the Highway Commercial District.

2.  On February 7, 2019 Applicant applied to the DRB for amendments to the 2018 Site Plan Approval to construct a 40' x 60' outdoor pavilion and other improvements on the Property.

3.  On April 15, 2019, the DRB approved the amended site plan application with conditions (2019 Site Plan Approval).[4] See In re: Jim Bourne, property owner and Lonie Parker dba Porky's Backyard Barbecue, No. 2019-DRB-02-SP, Findings and Decision (Town of New Haven

---

[4] This April 15, 2019 decision included amendments to the prior permit, however those amendments are not at issue in this proceeding. To avoid confusion with subsequent amendments that are at issue here, we refer to the April 15, 2019 decision simply as the 2019 Site Plan Approval.

4

Dev. Rev. Bd. Apr. 15, 2019) [hereinafter "2019 Site Plan Approval"] The 2019 Site Plan Approval was not appealed.

4. The 2019 Site Plan Approval includes conditions prescribing the appropriate construction of the pavilion; limiting the number of events to be held throughout the year; describing the placement and removal of portable toilets; specifying that no liquor shall be served outdoors; and requiring compliance with local, State, and Federal permits.

5. On May 1, 2019, the State of Vermont and the Town of New Haven granted a third-class restaurant/bar license to sell spirituous liquor for on-premise consumption, effective until April 30, 2020, to Applicant. See License # 9823-001-3RST-001 [hereinafter "Liquor License"], attached to Opposition to Motion to Dismiss or for Summary Judgment. On June 7, 2019, Applicant was also granted an outside consumption permit, effective until April 30, 2020. See Permit # 9828-001-OUTC-001 [hereinafter "Consumption Permit"], attached to Opposition to Motion to Dismiss or for Summary Judgment.

6. Applicant states that it began using the outdoor pavilion in July 2019. Statement of Undisputed Material Facts ¶ 6, filed Apr. 24, 2020. Neighbor denies the statement, citing lack of information, but also appears to argue that Applicant was using the pavilion as of July 23, 2019 and beyond. See Response to Statement of Undisputed Material Facts ¶¶ 6–7, filed June 3, 2020; Opposition to Appellee's Motion to Dismiss or for Summary Judgment at 8, filed May 29, 2020.

7. On July 23, 2019, the New Haven Zoning Administrator (ZA) notified Applicant that a Certificate of Occupancy (CO) was needed for the property, and that Applicant was required to comply with conditions of the DRB's 2019 Site Plan Approval in order to receive a CO.

8. On August 6, 2019, Applicant filed a request to amend or clarify the 2019 Site Plan Approval with the DRB, seeking (1) permission to leave a portable toilet on site for the event season (May through October), (2) permission to serve alcohol outside in the pavilion, and (3) to confirm that plans for the pavilion enclosure would comply with existing permit conditions. See August 6, 2019 Application to Development Review Board, attached to Motion to Dismiss or for Summary Judgment [hereinafter "Amendment Application"].

9. While the site plan amendment/clarification was pending, the ZA issued an NOV to Applicant on August 23, 2019. See Notice of Violation at 1, attached to Applicant's Motion to Dismiss or for Summary Judgment [hereinafter "NOV"]. The NOV notified Applicant of three alleged violations: operating the outdoor pavilion without a CO, service of liquor in the pavilion, and events in excess of eight per month.

10. Applicant appealed the NOV to the DRB on September 4, 2019. Applicant sought to appeal (1) the use of the outdoor pavilion without a CO, (2) the service of liquor in the outdoor pavilion, and (3) argued that the event limit of eight had not been exceeded. See September 3, 2019 Application to Development Review Board, attached to Motion to Dismiss or for Summary Judgment. Applicant served liquor at the pavilion before receiving the NOV. See id.

11. On December 16, 2019, the DRB issued the Amended Site Plan Approval granting Applicant's requests. See In re: Lonie Parker dba Porky's Backyard Barbecue, No. 2019-DRB-07-SP, Findings and Decision (Town of New Haven Dev. Rev. Bd. Dec. 16, 2019) [hereinafter "Amended Site Plan Approval"]. The Amended Site Plan Approval directed Applicant to obtain a CO prior to reopening of the pavilion in May 2020 and concluded that all findings recorded in the decision were to be included as conditions in granting the approval.

12. Also on December 16, 2019, the DRB issued its decision on Applicant's appeal of the NOV. See In re: Lonie Parker dba Porky's Backyard Barbecue, No. 2019-DRB-09-AP, Findings and Decision (Town of New Haven Dev. Rev. Bd. Dec. 16, 2019) [hereinafter "NOV Decision"]. The NOV Decision stated that (1) a CO, to be issued if all conditions of the 2019 Site Plan Approval and Amended Site Plan Approval are met, must be obtained prior to any future use of the pavilion; (2) Applicants may serve liquor in the pavilion; and (3) the term "event" as used in Condition 2 of the 2019 Site Plan Approval means any activity extending beyond 9:00 pm.

13. Neighbor timely filed an appeal to this Court on January 31, 2020. The Notice of Appeal challenges both the Amended Site Plan Approval and the NOV Decision.

14. On February 14, 2020, Applicant received a CO for the 60' x 40' outdoor pavilion on the Property, which approved the development as compliant with the 2019 Site Plan Approval

and the Amended Site Plan Approval. The CO approved use of the pavilion after May 1, 2020. Neighbors appealed this CO to the DRB.

15. On May 21, 2020, the DRB issued a decision affirming the issuance of a CO to Applicant for the Property.

16. On May 27, 2020, Neighbor appealed the DRB's decision regarding the CO to this Court. The CO appeal is not part of this proceeding.

## Discussion

Applicant's motion seeks dismissal or summary judgment on each of Neighbor's 16 questions and raises multiple issues including: (1) this Court's subject matter jurisdiction over wastewater systems [Questions 1–5] and service of liquor [Question 8]; (2) whether questions related to alleged violations are moot [Questions 6–7, 14–15]; (3) the meaning of the term "event" and whether the DRB's clarification of the term constitutes an illegal permit amendment [Questions 9–12 ]; (4) whether the alleged violation regarding events should be upheld [Question 13]; and whether the changes and clarifications approved by the DRB in the Amended Site Plan Approval are permissible [Question 16]. In addition, Neighbor seeks additional time for discovery concerning wastewater systems and "event" information.

The NOV appeal concerns only whether there has been a violation of the Town of New Haven Zoning Bylaws (Bylaws) or the terms of Applicant's 2019 Site Plan Approval, as alleged in the NOV. The Site Plan appeal concerns Applicant's request for amendment or clarification and the DRB's Amended Site Plan Approval. We now address which of Neighbor's questions relate to each appeal.

As we have said, Neighbor appeals from two decisions of the DRB yet filed only one notice of appeal and one Statement of Questions. To determine which questions must be addressed in the NOV appeal and which in the Site Plan appeal, we will interpret the Statement of Questions liberally. See In re LaBerge NOV, 2016 VT 99, ¶ 15, 203 Vt. 98 (citing In re Jolley Assocs., 2006 VT 132, ¶ 9) (noting that matters "intrinsic to the statement of questions" may be considered, "even if they are not literally stated"). Thus, any question which could conceivably relate to zoning

violations will be addressed in the NOV appeal and any question which could conceivably relate to the Amended Site Plan Approval will be addressed in the Site Plan appeal.[5]

Questions 1–5 each contemplate State or municipal wastewater requirements and Applicant's compliance with those requirements. See Statement of Questions, filed Jan. 31, 2020. The Questions are clearly aimed at potential violations related to wastewater, meaning we must address them in the NOV appeal. There is no relationship to the Amended Site Plan Approval, which is the subject of the Site Plan appeal, therefore Questions 1–5 are not before us in that matter. See id.

Questions 6 and 7 relate to an alleged violation in the NOV; they ask whether Applicant operated the outdoor pavilion without a Certificate of Occupancy. See Statement of Questions. Neither Question bears any relationship to the Amended Site Plan Approval. As such, Questions 6 and 7 are part of the NOV appeal and are not before us in the Site Plan appeal. Question 8 asks whether Applicant violated a condition of its site plan approval by serving liquor at the outdoor pavilion. See id. Therefore Question 8 is part of the NOV appeal and is not before us in the Site Plan appeal.

Questions 9 and 10 ask whether various uses of Applicant's pavilion constitute "events" as that term is used in Condition 2 of the 2019 Site Plan Approval. See id. These Questions implicate the NOV, which alleged that Applicant violated the terms of its permit by hosting more than 8 events per month. The Amended Site Plan Approval does not discuss or modify any term or condition related to events. The application to amend or clarify does not mention events. Therefore Questions 9 and 10 are part of the NOV appeal and are not before us in the Site Plan appeal.

Questions 11 and 12 ask whether the DRB's interpretation of the term "event" in Condition 2 of the 2019 Site Plan Approval constituted an illegal permit amendment. See id. While these Questions do raise amendment issues, the DRB interpreted "event" as part of its NOV Decision to determine whether Applicant had violated a condition of the 2019 Site Plan Approval. See NOV Decision at 3. The Amended Site Plan Approval does not discuss or modify

---

[5] Again, this sorting exercise is necessitated by the irregular way these appeals came forward. At this stage we are simply allocating questions to the correct town decision.

any term or condition related to events. The application to amend or clarify does not mention events. Thus, Neighbor is asking whether the DRB's interpretation, in the context of the NOV Decision, constituted an "illegal" or "de facto" permit amendment. See Statement of Questions. There is no identifiable relationship between these Questions and the Site Plan appeal. Thus, Questions 11 and 12 are part of the NOV appeal and are not before us in the Site Plan appeal.

Question 13–15 ask whether Applicant violated certain conditions of its permit, therefore these Question are part of the NOV appeal and are not before us in the Site Plan appeal. See id. Finally, Question 16 asks whether "any of the amendments" sought by Applicant in its request for amendment or clarification satisfy the Stowe Club test. See id. The DRB took up Applicant's request and issued the Amended Site Plan Approval. Question 16 is therefore part of the Site Plan appeal and is not before us in the NOV appeal. In summary, we will address Questions 1–15 in the NOV appeal and Question 16 in the Site Plan appeal.

I.      Neighbor's Motion for Extension of Time to Respond to Applicant's Motion to Dismiss or for Summary Judgment.

Neighbors request an extension of time to respond to Applicant's motion, pursuant to V.R.C.P. 56(d). Neighbors argues that an extension would enable Applicant to provide substantive responses to the interrogatories and requests to produce requested by Neighbor on April 3, 2020. This requested information includes the frequency and intensity of the use of the pavilion, advertisements for events and functions, use of the portable toilets, number of participants during "functions," and information regarding the wastewater system at the Property. Applicants contend that all the available responsive materials pertaining to matters properly before this Court have been provided, and that Neighbor made no request for supplemental discovery responses, failed to specify "essential" facts, did not request a discovery order, and did not make a good faith effort to resolve a discovery dispute prior to requesting a discovery order.

Rule 56 of the Vermont Rules of Civil Procedure governs motions for summary judgment. Pursuant to V.R.C.P 56(d), "[i]f a nonmovant shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, a court may allow time for discovery. V.R.C.P. 56(d)(2). Additionally, a party opposing a motion

9

for summary judgment must be afforded "an adequate opportunity to engage in discovery before being required to respond to the motion." Doe v. Doe, 172 Vt. 533, 534 (2001) (quoting Al Baraka Bancorp (Chicago), Inc. v. Hilweh, 163 Vt. 148, 156 (1994)).

Neighbor appears to suggest that she was not afforded adequate time for discovery in this matter, because Applicant objected to certain discovery requests on the same day that it filed its dispositive motion. We note that Neighbor had 30 days to respond to Applicant's motion, during which time Neighbor could have sought supplemental discovery, made a good faith effort to resolve discovery issues, filed an affidavit in accordance with V.R.C.P. 56(d), and filed a motion to compel pursuant to V.R.C.P. 26. To the Court's knowledge, Neighbor pursued none of these opportunities.

Though Neighbor has submitted a memorandum of law that raises concerns regarding wastewater systems and adequacy of "event" or "function" discovery information, she has not filed an affidavit as required by V.R.C.P. 56(d). This failure to comply with the rule is enough to justify denial of the request for additional time. See, e.g., Alan Wright, Arthur Miller and Mary Kay Kane, 10B Federal Practice & Procedure, Civil 3d § 2740 (West, Westlaw though 2009 update) ("The rule will not be liberally applied to aid parties who have been . . . dilatory . . . The most obvious indication of lack of diligence is a failure on the part of the nonmovant to present affidavits under either subdivision (e) or (f).") Furthermore, in our discussion below concerning Neighbor's Questions 1–5 in the NOV appeal, we conclude that the Court lacks jurisdiction to address wastewater issues. The additional discovery Neighbor seeks regarding wastewater systems will not cure this jurisdictional defect. As to discovery regarding events or functions, Applicant did respond to Neighbor's interrogatory with a description of specific events, dates, and times, along with an affidavit confirming the same. See Applicant's Answers to Neighbor's Interrogatories and Requests to Produce at 3–5, attached to Opposition to Motion to Dismiss or for Summary Judgment; Affidavit of Lonie Parker ¶ 5. Neighbor suggests that Applicant's response is not to be trusted, yet Neighbor took no steps to seek further information or file an

affidavit pursuant to V.R.C.P. 56(d).  Finally, the information Neighbor seeks regarding event attendees or participants is immaterial to the substantive issue before the Court.[6]

Another avenue available for discovery disputes is V.R.C.P. 26.  Under Rule 26(h), parties may make motions related to discovery procedure.  As a preliminary step to this process, parties have the obligation "to make good faith efforts among themselves to resolve or reduce all differences relating to discovery procedures and to avoid filing unnecessary motions."  V.R.C.P. 26(h).  Accordingly, no motions pursuant to Rules 26 and 37 may be made without an attempt to confer in good faith to eliminate or reduce the area of controversy.  Id. (requiring that a discovery motion be filed with the Court, after a good faith effort is made, that includes an affidavit specifying issues raised and unresolved); In re Champlain Parkway Act 250 Permit, 2015 VT 105, ¶ 13, 200 Vt. 158.  Here, it appears there has been no good faith effort.  For the foregoing reasons, and because Neighbor did not comply with V.R.C.P. 56(d), we **DENY** Neighbor's motion for additional time.

II.     The NOV Appeal

Applicant's motion seeks dismissal or summary judgment on all questions before the Court in the NOV appeal.

a. *Neighbor's Questions 1–5*

Applicant contends that Questions 1–5 addressing the Property's wastewater system are outside the subject matter jurisdiction of the DRB and this Court on appeal, and therefore the Questions should be dismissed.  Applicant further argues that wastewater issues fall within the jurisdiction of the Vermont Agency of Natural Resources (ANR).

Neighbor's Questions 1–5 ask:

1. Whether prior to beginning the business operation of the pavilion, Lonie Parker obtained wastewater permit authorization from the State of Vermont Department of Environmental Conservation (DEC) to authorize the use of the existing mound system to by [sic] members of the public that patronized the pavilion as required by Condition 6 of the April 15, 2019 Amended Site Plan.

---

[6] In our discussion of Questions 9 and 10 in the NOV appeal, we note that Applicant's 2019 Site plan approval imposes a limit of 8 events per month, and we conclude that an "event" is defined as any activity extending beyond normal operating hours. The number of participants involved in the events has no bearing on the question whether Applicant violated the terms of its approval.

2. Whether Lonie Parker operated the pavilion without wastewater permit approval from the DEC.
3. Whether the existing wastewater permit, V/W-9-0243 dated August 25,1995, authorized the construction and operation of the pavilion.
4. Whether Lonie Parker has a wastewater permit from the DEC to authorize the operation of the pavilion.
5. Whether Lonie Parker violated Condition 6 of the April 15, 2019 Amended Site Plan by operating the pavilion in violation of the wastewater permit requirements of the state [sic] of Vermont.

Statement of Questions.

We agree with Applicant that these Questions are outside our jurisdiction in this matter. The Environmental Division is a Court of limited jurisdiction.[7]  4 V.S.A. § 34 (limiting this Court's jurisdiction under specific statutes).  Here, the Court's review is limited to the issues properly before the DRB below.[8]  In re Sweet Bldg. Permit, No. 19-2-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jan. 25, 2013) (Walsh, J.); see In re Torres, 154 Vt. at 235  ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader."); V.R.E.C.P. 5(g) (the Court "shall apply the substantive standards that were applicable before the tribunal appealed from").  Applicant appealed the August 23, 2019 NOV to the DRB, thus the scope of review for the DRB and this Court is limited to the alleged violations cited in the NOV.  See 24 V.S.A. §§ 4465(a), (c)(1) (appropriate municipal panels are empowered to hear and decide appeals from a "decision or act taken" by the zoning administrator); In re Richard Notice of Violation, No. 151-9-10 Vtec, slip op. at 6–7 n.7 (Vt. Super. Ct. Envtl. Div. Apr. 29, 2010) (Wright, J.).

Both the NOV and the DRB's decision cite three alleged violations: (1) use of a pavilion without a Certificate of Occupancy, (2) service of liquor in the outdoor pavilion, and (3) events in excess of eight per month.  The NOV does not allege any violation regarding wastewater systems

---

[7] "There is no presumption of jurisdiction as to courts of special and limited powers."  Barber v. Chase, 101 Vt. 343, 351 (1928) (citing Barrette v. Crane, 16 Vt. 246, 252–254 (1844)).  The Environmental Court's authority is narrowly defined; we must be diligent in refusing to address matters not within our jurisdiction. "It has long been the law of this State that a court will dismiss a cause at any stage, whether moved by the party or not, when it is discovered that it [lacks subject matter] jurisdiction."  Gerdel v. Gerdel, 132 Vt. 58, 65 (1973) (citing In re Bellows Falls Hydro-Elec. Corp., 114 Vt. 443, 445 (1946)).

[8] It therefore follows that if the DRB was without authority to address the legal issues presented in Neighbor's Statement of Questions, this Court is likewise without authority address them.  See Couture Subdivision Permit, No. 53-4-14 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Feb. 23, 2015) (Durkin, J.).

on the Property. As such, the wastewater issues raised in Questions 1–5 are outside the scope of this NOV appeal. See In re Torres, 154 Vt. at 235. We recognize that Condition 6 of Applicant's 2019 Site Plan Approval requires compliance with State of Vermont wastewater permitting requirements, however the NOV at issue here did not allege a violation of Condition 6. See 24 V.S.A. §§ 4451(a)(2)(A), (B) (notices of violation must state the bylaw or permit condition "alleged to have been violated," and must state "the facts giving rise to the alleged violation").[9]

We further note that neither the DRB nor this Court has jurisdiction to review the substantive issue of Applicant's compliance with State wastewater regulations or permit requirements. The bylaws do not contain any provisions that regulate the permitting of wastewater systems nor do they direct the DRB to address wastewater systems. ANR has jurisdiction, pursuant to 10 V.S.A. ch. 64, over on-site wastewater disposal systems and has ability to delegate qualifying municipalities the authority to implement, administer, and enforce regulations concerning potable water and wastewater system permits.[10] 10 V.S.A. § 1976. Here, there is no evidence that such a delegation has been made to the Town of New Haven. As such, enforcement proceedings under the wastewater permitting statute, 10 V.S.A. § 1971 et seq., may only be instituted by the Secretary of ANR, pursuant to 10 V.S.A. § 8003(a)(9), unless the Secretary has delegated that authority to the municipality pursuant to 10 V.S.A. § 1976.

We conclude that the Court has no subject matter jurisdiction over wastewater issues in this matter. The NOV does not allege any municipal violations related to wastewater, and we have no authority to consider Applicant's compliance with State permitting requirements in the context of this municipal NOV appeal.[11] For the above reasons, we conclude that Neighbor's

---

[9] The NOV does state that Applicant failed to obtain a CO, and that all permit conditions must be met before a CO can be granted. Nonetheless, the NOV does not allege a violation of Condition 6.

[10] Prior to July 1, 2007 municipalities retained authority to regulate on-site septic systems through municipal sewage ordinances under 24 V.S.A. ch. 102. After July 1, 2007, pursuant to 10 V.S.A. § 1976(b), municipal ordinances that regulated potable water supplies and wastewater systems were superseded by the state statute and regulations concerning wastewater disposal systems, unless municipalities received special delegation from ANR. See In re Nancy Lewis Revocable Trust Variance, No. 110-6-08 Vtec, slip op at 2 (Vt. Super. Ct. Envtl. Div,. Apr. 29, 2011) (Wright, J.). The state regulations were intended "to establish a comprehensive review and permitting process for wastewater systems that would have state-wide uniformity." In re Bibby 5-Lot Final Plat Subdivision & Waiver Application, No. 189-11-10 Vtec, at 3 ( Mar. 02, 2012); 10 V.S.A. § 1971.

[11] The parties agree that the 2019 Site Plan approval is final and binding because it was not appealed. See 24 V.S.A. § 4772(d). Thus, if the NOV had alleged a violation of Condition 6, we would have jurisdiction to decide whether the violation occurred. See Phillips Constr. Servs., Inc. v. Town of Ferrisburg, 154 Vt. at 485 (holding that

Questions 1–5 addressing wastewater systems are beyond the scope of this appeal and must be **DISMISSED**.

   b. *Neighbor's Questions 6 and 7*

Neighbor's Questions 6 and 7 ask whether Applicant failed to obtain a Certificate of Occupancy (CO) prior to operating the pavilion and whether Applicant violated § 320 of the Town of New Haven Bylaws (bylaws) by operating the pavilion without a CO.  See Statement of Questions.

As a preliminary matter, the issue of whether Applicant has violated § 320 by operating the pavilion without a CO falls squarely within the scope of this appeal.  The NOV alleges that Applicant violated the Bylaws by using the pavilion without a CO.  See NOV at 1.  Applicant asserts that Questions 6 and 7 are moot because it obtained a CO for the pavilion on February 14, 2020 and thus there is no ongoing violation.[12]  Neighbor contends that the subsequent receipt of a CO does not render Questions 6 and 7 moot.

In general, an issue becomes moot when it is "no longer 'live' or the parties lack a legally cognizable interest in the outcome."  See In re Moriarty, 156 Vt. 160, 163, (1991) (citations omitted); Paige v. State, 2013 VT 105, ¶ 8, 195 Vt. 302 (noting that an appeal must involve an actual or "live" controversy between two adverse litigants with a cognizable interest in the case's outcome).  This is an NOV appeal; our task is to determine whether Applicant violated the Bylaws or permit provisions as alleged in the NOV.  Although we commend Applicant for taking steps to obtain a CO and thereby curb the alleged violation, "remedial acts do not make . . . past zoning transgression[s] evaporate."  See In re Cote Notice of Violation, No. 165-8-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. Dec. 05, 2007) (Durkin, J.); APC Property LLC, No. 116-9-15 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Jan. 21, 2016) (Walsh, J.) (stating that a subsequent approval "has no bearing

---

[24 V.S.A.] § 4472 applies to ultra vires zoning board permit decisions). Even then, however, the question whether Applicant violated a permit condition is distinct from questions regarding the scope or substance of existing ANR permits or Applicant's compliance with State wastewater regulations.

   [12] Applicant also suggests that these Questions are moot because the DRB's decision below did not impose penalties. As this is an NOV appeal, our task is to determine whether a violation occurred. Penalties are not relevant until and unless the Town brings an enforcement action.

on past zoning violations; even if successful in obtaining a . . . permit, [Appellant] will still be liable for any zoning violations that occurred prior to the issuance of the permit").

The question remains whether Applicant committed a violation in the period between the issuance of the permit and the issuance of the CO. Thus, we conclude that Questions 6 and 7 reference live controversies. If Applicant demonstrates that it did not operate the pavilion without a CO, summary judgment on Questions 6 and 7 could be appropriate. In re Bibby 5-Lot Final Plat Subdivision & Waiver Application, No. 189-11-10 Vtec, at 2–3 (Mar. 2, 2012).

The evidence before us shows that Applicant received an NOV, which provided notice that a CO was required, on August 23, 2019.[13] Applicant timely appealed the NOV on September 4, 2019, and the DRB thereafter upheld the alleged violation. Based on Applicant's statement of undisputed facts, Applicant used the outdoor pavilion before receiving a CO.[14] Applicant has since obtained a CO, which Neighbors have appealed to this Court in a separate matter.

The Bylaws clearly state that use or occupancy of any structure is unlawful "unless a Certificate of Occupancy has been issued therefore by the Administrative Officer stating that the proposed use of the land or structure conforms to the provisions of these regulations." Bylaws § 320. A "structure" is defined by the Bylaws as "anything constructed, erected, or paced on property, the use of which requires location on the ground, or attachment to something located on the ground." Bylaws § 130. It appears that the pavilion falls within the definition of a structure and that Applicant is bound under § 320 to obtain a CO prior to commencing operation of the pavilion.

Because Applicant has failed to show compliance with the Bylaws, we cannot grant summary judgment as to Questions 6 and 7 at this stage. Rule 56(f) permits this Court to issue a judgment independent of a motion after giving parties adequate notice and a reasonable time to respond. See V.R.C.P. 56(f); see Mahan Conditional Use Application, No. 86-8-14 Vtec, slip op. at 8–9 (Vt. Super. Ct, Envtl. Div. Feb. 19, 2015) (Walsh, J.) (giving parties notice of the Court's intent

---

[13] Applicant states that it began using the pavilion in July 2019. Applicant received a CO in February 2020.

[14] In Applicant's response to interrogatories, Applicant details numerous functions, from to August 23, 2019 until October 2, 2019, that have been held at the outdoor pavilion following the receipt of the NOV on August 23, 2019. See Applicant's Answers to Neighbor's Interrogatories and Requests to Produce at 3–5, attached to Opposition to Motion to Dismiss or for Summary Judgment.

to grant summary judgment to a nonmovant and opportunity to respond). If the undisputed facts show that Applicant operated the pavilion without a CO, we intend to grant summary judgment on Questions 6 and 7, pursuant to V.R.C.P. 56(f)(2), in Neighbor's favor. The parties have 30 days from the date of this decision to provide supplemental evidentiary material and briefing in accordance with V.R.C.P. 56 to respond to the Court's inclination to grant summary judgment in the Neighbor's favor.

c. *Neighbor's Question 8*

Neighbor's Question 8 asks: "Whether [Applicant] violated Finding 7, p. 3 and /Condition [sic] l, p. 4 of the April 15, 2019 Amended Site Plan by serving liquor in connection with the operation of the pavilion." Statement of Questions.

Applicant argues this Court lacks subject matter jurisdiction over Question 8, because the DRB, and therefore this Court on appeal, does not have authority to regulate the sale of liquor. We agree that the authority for licensing, permitting and other regulation of liquor lies with the Vermont Liquor Control Board and the Commission of Liquor and Lottery, not the DRB.[15] In this case however, the question whether Applicant violated a permit condition regarding service of liquor is distinct from the question whether Applicant was in compliance with State liquor laws.[16]

Finding No. 7 of the 2019 Site Plan Approval incorporates the conditions already in effect from the 2018 Site Plan Approval, including a condition on liquor: "[f]or some events . . .

---

[15] The Vermont Liquor Control Board (the Board) administers the laws that govern the distribution and sale of alcoholic beverages in Vermont. See 7 V.S.A. § 104; In re DLC Corp., 167 Vt. 544, 548 (1998). The Board is tasked with "the express authority to promulgate and enforce regulations relating to the "furnishing, purchasing, selling, . . . delivering and possessing of alcohol." In re Club 107, 152 Vt. 320, 323 (1989) (quoting 7 V.S.A. § 104(8)); see also 7 V.S.A. § 104(5) (giving the Board authority to make regulations necessary for the execution of its powers and duties). Moreover, 7 V.S.A. § 104(8) allows the Board to adopt rules and issue licenses and permits through the Commission of Liquor and Lottery (the Commission). See In re Judy Ann's Inc., 143 Vt. 228, 232 (1983) (stating that the Commission has broad authority to control the conduct and to discipline proscribed conduct). While 7 V.S.A. §§ 161–168 allows for limited municipal control by Commissioners, the Board retains broad authority to prescribe permits, forms, and rules. 7 V.S.A. § 167 (allowing Commissioners to authorize permit conditions with any ordinance regulating entertainment or public nuisances and suspend or revoke permits). The Environmental Division's jurisdiction is limited to the powers of the DRB below. 4 V.S.A. § 34; In re Sweet Bldg. Permit, No. 19-2-12 Vtec, at 2 (Jan. 25, 2013).

[16] The NOV alleged that Applicant violated the terms of its permit by serving hard spirits "despite the DRB [2019 site plan] decision that only allowed for wine and beer," and requested Applicant to cease the service of liquor in the outdoor pavilion. NOV at 1. The DRB later altered the site plan approval to remove the restriction.

16

[Applicant] will have outdoor consumption of beer/wine. There will be no liquor served." See 2019 Site Plan Approval at 3.[17] The 2019 Site Plan Approval was never appealed. Because no party filed a timely appeal with this Court, the decision of the DRB is final and incontestable. See 24 V.S.A. § 4472(d). Under 24 V.S.A. § 4472, appeal is the exclusive remedy; failure to appeal means that all parties are "bound by that decision . . . and shall not thereafter contest, either directly or indirectly, the decision . . . in any proceeding, including any proceeding brought to enforce this chapter." Id. The Vermont Supreme Court has consistently held that permits which are otherwise void as ultra vires or ab initio are subject to this exclusivity of remedy provision. See, e.g., Phillips Constr. Servs., Inc. v. Town of Ferrisburg, 154 Vt. 483, 485 (1990) (holding that § 4472 applies to ultra vires zoning board permit decisions); Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989) (holding that § 4472 applies to ab initio zoning board permit decisions). Thus, although the condition prohibiting service of liquor may have been beyond the DRB's authority, it became final and enforceable when the time to appeal expired.

We conclude that Question 8, asking whether Applicant violated the terms of its site plan permit by serving liquor at the pavilion, is within the proper scope of this NOV appeal. Even so, Applicant contends that Question 8 should be dismissed because (1) at the relevant times, Applicant possessed all the necessary State and local permits for outside service and consumption of liquor, and (2) the Question is moot: the DRB subsequently approved the service of liquor at the pavilion. Neither argument justifies dismissal. First, Applicant may have the necessary permits, but the NOV does not allege a violation based on State or local liquor permitting requirements. The alleged violation relates to a condition in the 2019 Site Plan Approval which is final and cannot now be challenged. See NOV at 1; 2019 Site Plan Approval at 3–4; Phillips Constr. Servs., Inc. v. Town of Ferrisburg, 154 Vt. at 485. Second, although Applicant later received approval to serve liquor at the outdoor pavilion, "remedial acts do not make . . . past zoning transgression[s] evaporate." See Cote Notice of Violation, No. 165-8-07 Vtec at 3 (Dec. 05, 2007); APC Property LLC, No. 116-9-15 Vtec at 4 (Jan. 21, 2016).

---

[17] Condition 1 of the approval also states: "All findings as recorded in . . . this decision are included as conditions in the granting of this approval." 2019 Site Plan Approval at 4.

For the reasons above, we conclude that dismissal is not warranted. As with Questions 6 and 7 above, we note that Rule 56(f) permits this Court to issue a judgment independent of a motion after giving parties adequate notice and a reasonable time to respond. See V.R.C.P. 56(f); Mahan Conditional Use Application, No. 86-8-14 Vtec at 8–9 (Feb. 19, 2015). If the undisputed facts show that Applicant served liquor at the pavilion before receiving approval, we intend to grant summary judgment on Question 8, pursuant to V.R.C.P. 56(f)(2), in Neighbor's favor. The parties have 30 days from the date of this decision in which to respond to the Court's intent to grant summary judgment on Question 8 in Neighbor's favor.

d. *Neighbor's Questions 9 and 10.*

Questions 9 and 10 address the DRB's interpretation of the term "events" as it relates to Applicant's use of the outdoor pavilion. Condition 2 of the 2019 Site Plan Approval limited "outdoor events" to 8 per month from May through October, and "indoor events" to 8 per month from November through April. 2019 Site Plan Approval at 4. The NOV alleged a violation of Condition 2, stating: "Your Facebook page currently lists twelve events for the month of August, but your DRB approval allows for only eight events per month." NOV at 2. On appeal to the DRB, Applicant argued that the limitation on events did not apply to use of the pavilion during normal business hours. The DRB agreed, interpreting "event" to mean "any activity that extends beyond the normal closing time of 9:00 pm." See NOV Decision at 3. Neighbors' Questions 9 and 10 ask:

9. Whether [Applicant's] use of the pavilion for live music, band concerts, line dancing, and other dedicated and/or advertised functions constitute "events" subject to Condition 2 of the [2019 site plan] that limits the number of outdoor events to 8 events per month from May through October.
10. Whether [Applicant's] use of the pavilion for live music, band concerts, line dancing, and other dedicated and/or advertised functions that do not continue past 9:00 p.m. constitute "events" subject to the Condition 2 of the [2019 site plan] that limits the number of outdoor events to 8 events per month from May through October.

Statement of Questions.

Applicant maintains its argument that the term "events" in Condition 2 relates to activities after normal business hours. Applicant also contends that the DRB's is entitled to deference when interpreting its own permit decision. Neighbors counter that a *de novo* appeal requires this Court to assume for itself the role of the DRB and therefore owes no deference to the DRB's

18

decision. Whether the DRB's decision is entitled to deference or not, we agree with Applicant that the term "events" as used in Condition 2 refers to events after normal business hours. Though we reach this conclusion by applying the principles of permit interpretation, we first discuss the possibility of deference in response to the parties' arguments.

A DRB's interpretation of a zoning bylaw is entitled to some measure of deference, even in the context of *de novo* review, "if it is reasonable and has been applied consistently." See In re Carrigan Conditional Use & Certificate of Compliance, 2014 VT 125, ¶ 10, 198 Vt. 438 (2014); In re Maple Tree Place, 156 Vt. 494, 499–500 (1991) (interpretation by a zoning board "can be determinative in a close case."); In re Korbet, 2005 VT 7, ¶ 10, 178 Vt. 459 (2005) ("[T]he weight to be accorded . . . depends on the explanation of a 'reason or rationale for its decision' and a demonstration that the interpretation has been consistent.") (quoting In re Chatelain, 164 Vt. 597, 598 (1995) (mem.)). There is no evidence that the DRB in this case has adopted a consistent definition of the term "event." For that reason, the interpretation is not entitled to deference under this line of precedent.[18]

---

[18] We note however, that the DRB in this case was not interpreting a town bylaw. The term "events" as used here relates only to a condition drafted and imposed by the DRB itself. See generally Bylaws § 252. Thus, the DRB's interpretation of the condition and the meaning of "events" in the context of the NOV appeal simply clarified what the DRB intended when it drafted the permit condition. See NOV Decision at 3.

In this regard, the DRB's action is analogous to the situation that arises when an administrative agency interprets its own promulgated rules or permit conditions. The Vermont Supreme Court has stated that it generally affords "substantial deference to an agency's interpretation of its own regulations." In re ANR Permits in Lowell Mountain Wind Project, 2014 VT 50, ¶ 15, 196 Vt. 467 (citation omitted). The policy justifications behind affording an agency deference include "agency expertise" and the agency's "familiarity with [the] purpose of [its] regulation." Bacon v. Lascelles, 165 Vt. 214, 218–19 (1996) (citations omitted). In other words, the agency as the author of the regulation is in the best position to understand the underlying intent and purpose. See In re ANR Permits in Lowell Mountain Wind Project, 2014 VT 50, ¶ 15 ("Interpretation of the [Vermont Stormwater Management Manual] is squarely within [the Agency of Natural Resource]'s expertise as its authoring agency."). Another important consideration is whether the interpretation is within the bounds of authority delegated by the relevant enabling statute. See id., ¶ 16 (noting that "the statutory authorization for the [stormwater] permitting program delegates discretion to the implementing agency").

Here, the DRB drafted and imposed Condition 2 as part of the 2019 Site Plan Approval, consistent with its discretion under the enabling statute to "impose, in accordance with the bylaws, appropriate conditions and safeguards." See 24 V.S.A. § 4416 (authorizing site plan review). As the 2019 approval was never appealed, the condition is final and cannot be challenged. See 24 V.S.A. § 4472; Phillips Constr. Servs., Inc. v. Town of Ferrisburg, 154 Vt. at 485. Furthermore, the bylaws do not discuss or define "events" – rather it appears that the DRB chose the term with a particular intent in mind to ensure that the approval included appropriate conditions and safeguards. Interpretation of the condition is therefore within the DRB's expertise as the author. See In re ANR Permits, 2014 VT 50, ¶ 15. While the DRB's interpretation of its own condition is comparable in some respects to an agency's interpretation of its own regulations, and thus some deference may be due, the precedent regarding agency

We therefore construe the terms of the permit using the familiar rules of statutory construction. In re Barry, 2011 VT 7, ¶ 19, 189 Vt. 183. Our "paramount goal" is to implement the intent of the drafters. See Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We first attempt to give effect to the plain meaning of permit terms. See In re Weeks, 167 Vt. 551, 554 (1998). If the meaning is plain, we go no further. Id. If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995). And, because a land use permit is in derogation of common law property rights, we construe any ambiguities in the permit in favor of the landowner. In re Barry, 2011 VT 7, ¶ 18.

Condition 2 of the 2019 Site Plan Approval states:

There will be a maximum of eight (8) outdoor events per month from May through October and the hours of operation for these events is extended to 11:00 pm. From November through April, a maximum of eight (8) indoor events per month and the hours of operation for these events is extended to 11:00 pm. . . . The hours of operation means that the event is ended and people have one hour to leave the premises.

2019 Site Plan Approval at 4. Beginning with the plain meaning, an event is generally a social occasion, activity, or "noteworthy happening." See Webster's New College Dictionary 753, 1235 (3d ed. 2005). Under this broad definition, any special occasion could be considered an event. The language of Condition 2, however, ties "events" to the hours of operation. See 2019 Site Plan Approval at 4. It is unclear whether the condition places an 8-per-month limit on all events and allows those events to continue after normal business hours, or whether the limit relates only to events *that in fact* extend beyond normal business hours.

This ambiguity can be resolved by looking to the permit as a whole. See, e.g., Shea v. Metcalf, 167 Vt. 494, 498 (1998) (citation omitted) ("[W]here there is ambiguity, we look to the general context of the . . . language, the subject matter, and the effects and consequences of our interpretation."). In Finding No. 5 of the 2019 Site Plan Approval, the DRB incorporated and relied upon certain key aspects of Applicant's proposal. As relevant here, the DRB found:

---

deference is not directly applicable. Because our conclusion is the same regardless of the deference due, we proceed under the principles of permit interpretation.

20

On 8 nights per month (Friday and Saturday only) the hours will be extended to 11:00 pm, with everyone to be out by 12:00 am except staff. All lights will be turned off by 9:00 pm except on event nights when the lights will be turned off by 12:00 am.

2019 Site Plan Approval at 3. In context, Condition 2's limit of 8 "events" per month appears directly related to Applicant's 8 proposed "event nights" which were to occur after normal business hours. We therefore conclude that the term "events" as used in Condition 2 means activities (whether indoors or outdoors) that extend beyond normal business hours. Our conclusion is bolstered by the mandate that any ambiguities should be construed in favor of the property owner. See In re Barry, 2011 VT 7, ¶ 18; see also Appeal of Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978) ("Conditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land . . . .").

While Applicant states that Questions 9 and 10 should be dismissed, its argument appears to seek summary judgment. Dismissal would be inappropriate here, as the Questions are within the scope of this NOV appeal. Because we conclude that the term "events" as used in Condition 2 of the 2019 Site Plan Approval means activities that extend beyond normal business hours, Applicant is entitled to judgment as a matter of law. To the extent Applicant's motion seeks summary judgment on Question 9 and 10, the motion is **GRANTED**. Question 9 is answered in the affirmative as we conclude that uses of the pavilion past 9:00 PM constitute "events" under Condition 2, and Question 10 is answered in the negative as we conclude that uses of the pavilion that do not continue past 9:00 PM do not constitute "events."

e. *Neighbor's Questions 11 and 12*

Neighbor's Question 11 and 12 address whether the DRB's interpretation of Condition 2 of the 2019 Site Plan Approval constitutes an illegal amendment to a final permit condition. The DRB interpreted Condition 2 in the context of Applicant's municipal NOV appeal, for the purpose of determining whether Applicant violated the terms of its permit. Questions 11 and 12 ask:

11.    Whether interpreting Condition 2 of the [2019 site plan] in [Applicant's] appeal of the Notice of Violations [sic] to apply to only those events which continue past 9:00pm would constitute an illegal amendment of a final permit condition in violation of In re Stowe Club Highlands, 166 Vt. 33 (1996); In re Nehemiah, 168 Vt. 288 (1998); and In re Hildebrand, 181 Vt. 568 (2007).

12.     Whether the DRB effectuated an illegal, de facto amendment of the [2019 site plan] by limiting the application of Condition 2 to only those events that extend past 9:00 p.m.

Statement of Questions.  Applicant argues that the DRB's interpretation in the NOV Decision merely clarified rather than amended the 2019 Site Plan Approval.  Neighbor contends that the DRB's "narrowing" of the numerical event limitation to uses of the pavilion after 9 p.m. does not satisfy any of the Vermont Supreme Court's articulated circumstances through which a permit may be amended.

We agree with Applicant that interpreting the meaning of Condition 2 for purposes of determining whether a violation occurred does not constitute a permit amendment.  To address Neighbor's argument to the contrary, we begin by reiterating the context of the present action.  This is not an appeal of a permit amendment, rather it is an NOV appeal.  The appeal is also *de novo*, meaning that "the case is heard as though no action whatever had been held prior thereto." In re Poole, 136 Vt. 242, 245 (1978).  The scope of the municipal panel's review below determines the scope of ours.  See In re Sweet Bldg. Permit, No. 19-2-12 Vtec at 2 (Jan. 25, 2013)  (citing In re Torres, 154 Vt. at 235). While a town may not collaterally attack the terms of a final and binding permit, a town is free to enforce the terms of that permit after it has become final and binding. See In re Barry, 2011 VT 7, ¶ 19 (quoting Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292 (1981)).  In the case of NOV appeals, the question whether a violation has occurred can turn on the meaning of terms and requirements within the relevant permit.  See, e.g., In re Barry, 2011 VT 7, ¶ 22 (noting that the key question was "precisely what was allowed by the ambiguous permit"); Beauregard NOV, No. 3-1-15 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Feb. 11, 2016) (Durkin, J.) ("Sometimes permit enforcement requires interpreting a permit's terms").

Neighbor does not provide, nor are we aware of any reason why the interpretation of a permit condition in an NOV appeal should be considered a change to the terms of the permit.  Cf. In re Barry, 2011 VT 7, ¶¶ 19, 26 (discussing the varying permit interpretations of local zoning officials and the Environmental Court in the context of an NOV appeal); Agency of Nat. Res. v. Weston, 2003 VT 58, ¶¶ 15–17 175 Vt. 573 (interpreting a permit condition in an Act 250 enforcement action).  Construing the existing terms of a zoning permit is sometimes necessary

to determine what was approved; it is not the same as modifying, adding, or removing terms of the approval. See Beauregard NOV, No. 3-1-15 Vtec at 6 (Feb. 11, 2016).

In contrast, modifications traditionally subject to the Stowe Club Highlands test for permit amendments have assessed concrete and substantive changes to the original permit. See In re Hildebrand, 2007 VT 5, ¶¶ 3–4, 13–16, 181 Vt. 568 (considering Applicant's request to allow subdivision, when a final permit condition prohibited further subdivision, as request for amendment subject to the Stowe Club Highlands test); Stowe Club Highlands, 166 Vt. 33, 35–36 (1996) (treating Applicant's request to allow for residential development when the original permit condition required the land be "retained only for agricultural uses" as a request for amendment); In re Nehemiah Assocs., 168 Vt. 288, 291 (1998) (considering Applicant's request to allow subdivision when the original permit required the lands be agricultural reserve lands as an request for permit amendment). Here, the DRB examined the meaning of "events" to determine what was approved. See NOV Decision at 3. We have done the same in our appellate capacity. For the foregoing reasons, we conclude that establishing the meaning of "events" as used in Condition 2 of the 2019 Site Plan Approval does not constitute a change to Condition 2. The Stowe Club test does not apply. See In re Stowe Highlands Merger/Subdivision Application, 2013 VT 4, ¶ 13, 193 Vt. 142 ("Because the proposed amendment did not require a change in a permit condition, the Stowe Club test was not applicable . . . ."). We therefore **GRANT** Applicant's motion for summary judgment as to Questions 11 and 12, answering the Questions in the negative as we conclude that interpreting the meaning of "events" in Condition 2 does not constitute a permit amendment, and that the Stowe Club test does not apply.

f. *Neighbor's Question 13*

Neighbor's Question 13 asks "[w]hether [Applicant] violated Condition 2 of the April 15, 2019 Amended Site Plan by exceeding the maximum limit of 8 events per month in the pavilion." Statement of Questions. We have determined that Condition 2 of the 2019 Site Plan Approval allows no more than 8 "events" per month, and "events" are defined as activities at the Property

23

that extend beyond normal business hours.[19]  Applicant contends that, under the definition above, it has not held more than 8 events per month.  Applicant's statement of undisputed material facts contains the same assertion, citing to the affidavit of Lonie Parker in the record.  See Statement of Undisputed Material Facts at ¶ 20; Affidavit of Lonie Parker at ¶¶ 4, 5(A)–(L).  Neighbor responds with a denial on two fronts: (1) Applicant's discovery response lists 11 events hosted at the pavilion in August 2019, and (2) in the absence of further discovery, Neighbor "lacks information that would enable her to verify the accuracy of [the] statement."[20]  See Response to Statement of Undisputed Material Facts at ¶ 20.

As to Neighbor's first denial, it appears she is applying a different definition of "events" to the one advanced by Applicant and adopted by this Court.  Both the affidavit of Lonie Parker and Applicant's discovery response list 11 events at the pavilion in August 2019, yet both documents also show that only 8 of those events extended beyond the normal closing time of 9:00 pm. Affidavit of Lonie Parker at ¶ 5(H); Applicant's Answers to Neighbor's Interrogatories and Requests to Produce at 3–5, attached to Opposition to Motion to Dismiss or for Summary Judgment.  Thus, under our interpretation of Condition 2 in the 2019 Site Plan Approval, only 8 of the events would count toward the limit.  As to the second denial, "[a] party opposing summary judgment may not rest on allegations or denials, but must demonstrate, with citations to the record, that a fact is genuinely disputed." Cate v. City of Burlington, 2013 VT 64, ¶ 11, 194 Vt. 265 (citing White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 25 (1999)); V.R.C.P. 56(c)(1)(A).

Neighbor has not cited or provided any affidavits or other evidence that might establish a genuine dispute of fact on this issue.  See White, 170 Vt. at 28.  Thus, for the purposes of this motion, we consider it undisputed that Applicant has not held more than 8 events outside normal business hours.  V.R.C.P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion.").  As we

---

[19] Applicant's normal business hours are 7:00 am to 9:00 pm throughout the week.

[20] Neighbor's briefing does not address Applicant's position, but rather reiterates her request for additional discovery pursuant to V.R.C.P. 56(d). We have denied Neighbor's request after concluding that she had ample opportunity to seek resolution of the discovery dispute and that she failed to submit an affidavit in accordance with Rule 56(d).

have concluded that Condition 2 in the 2019 Site Plan Approval limits Applicant to 8 events per month which extend beyond normal business hours, the undisputed facts show that Applicant has not violated Condition 2. We therefore **GRANT** Applicant's motion for summary judgment as to Question 13 and answer the Question in the negative as we conclude that Applicant did not exceed the limit of 8 "events" per month under Condition 2 of the 2019 Site Plan Approval. See V.R.C.P. 56(e)(3).

g. *Neighbor's Questions 14 and 15*

Neighbor's Questions 14 and 15 address whether Applicant violated the 2019 Site Plan Approval by failing to construct the pavilion as required before commencing business operations in the pavilion. Applicant argues that these issues are moot because the Amended Site Plan Approval and the subsequent CO approve the pavilion as constructed by Applicant.

Questions 14 and 15 ask:

14. Whether [Applicant] violated the April 15, 2019 Amended Site Plan by failing to construct the pavilion as required by Finding 5, Condition 1.
15. Whether [Applicant] violated [sic] by commencing business operations in the pavilion without having constructed the pavilion as required by Finding 5, Condition 7.

Statement of Questions. Though neither party has questioned the Court's authority to address Questions 14 and 15, we are obligated to assess our subject matter jurisdiction "[w]henever it appears by suggestion of the parties or otherwise" that jurisdiction may be lacking. V.R.C.P. 12(h)(3); see also In re G.R. Enter., Inc. Sign Application, No. 27-2-08 Vtec, slip op. at 2-3 (Vt. Envtl. Ct. May 12, 2008) (Wright, J.) (citing Woodard v. Porter Hosp., Inc., 125 Vt. 264, 266 (1965)).

In our *de novo* appellate review of municipal decisions, this Court sits in the shoes of the relevant municipal panel. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h); In re Feeley Constr. Permits, Nos. 4-1-10 Vtec, 5-1-10 Vtec, slip op. at 11-13 (Vt. Super. Ct. Envtl. Div. Jan. 3, 2011) (Wright, J.) (citing In re Maple Tree Place, 156 Vt. 494, 500 (1991)). As we have said, the scope of the municipal panel's review determines the scope of ours. See In re Sweet Bldg. Permit, No. 19-2-12 Vtec, at 2 (Jan. 25, 2013) (citing In re Torres, 154 Vt. at 235). In this case the scope of review for the DRB, and therefore this Court, is limited to the alleged violations cited in the NOV. See 24 V.S.A. §§ 4465(a), (c)(1); In re Richard Notice of Violation, No. 151-9-10 Vtec at 6–7 n.7 (Apr. 29, 2010).

The NOV does not allege any violation regarding the construction of the pavilion.[21]  As such, we conclude that Questions 14 and 15 are outside the Court's jurisdiction in this appeal and must be **DISMISSED**.  See In re Torres, 154 Vt. at 235.

III.     The Site Plan Appeal

Question 16 presents the sole issue before the Court in the SP Appeal.  Applicant moves for dismissal or summary judgment.  Question 16 asks whether "any of the amendments" requested by Applicant in its August 6, 2019 application satisfy the Stowe Club test.[22]  In Applicant's request for amendment or clarification and the DRB's subsequent decision, three issues are addressed: (1) confirmation that the enclosure of the pavilion will conform to permit requirements, (2) permission to leave a portable toilet on-site from May through October, and (3) permission to serve liquor.  These issues relate to conditions imposed in Applicant's 2019 Site Plan Approval, which incorporated conditions from the 2018 Site Plan Approval. See 2019 Site Plan Approval at 2–4.  Applicant argues that wastewater systems and service of liquor are outside our jurisdiction in this appeal, and therefore the only issue that remains is the enclosure of the pavilion.[23]  As to the pavilion, Applicant seeks summary judgment on the basis that the DRB's Amended Site Plan Approval merely clarifies its own prior site plan decision.

In the context of this appeal, we disagree with Applicant as to this Court's jurisdiction to address issues related to portable toilets and service of liquor.  Question 16 asks us to address certain changes to the terms of Applicant's permit; we need not reach the substantive regulation of wastewater and liquor.  The 2019 Site Plan Approval was not appealed, thus the conditions of that approval are final and binding even if the DRB lacked authority to impose them.  See 24 V.S.A. § 4472(d); Phillips Constr. Servs., Inc. v. Town of Ferrisburg, 154 Vt. At 485 (stating that §

---

[21] As we have said, the NOV does allege that Applicant failed to obtain a CO, and that all permit conditions must be met before a CO can be granted.  Yet there is no alleged violation with respect to the pavilion itself.

[22] Question 16 reads:
> Whether any of the amendments to the [2019 site plan] requested by [Applicant] in his August 6, 2019 Application to Amend Permit satisfy any of the exceptions to the permit finality requirements as required by In re Stowe Club Highlands, 166 Vt. 33 (1996); In re Nehemiah, 168 Vt. 288 (1998); and In re Hildebrand, 181 Vt. 568 (2007).

Statement of Questions.

[23] Applicant appears to presume that the permit condition concerning portable toilets is related to wastewater regulation; that assumption is neither supported nor refuted by the record.

4472 applies to ultra vires zoning board decisions). If changes to those conditions trigger a Stowe Club analysis, we must proceed accordingly.

As a general rule, this Court has recognized the clear intent of the Legislature in limiting "zoning disputes to a well-defined procedure and to provide finality at the end of the proceedings." In re Dep't of Bldgs. & General Servs., 2003 VT 92, ¶ 21, 176 Vt. 41 (*quoting* City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 590 (2000) (mem.) (*citing* 24 V.S.A. § 4472)). Balancing this interest in finality are practical considerations of flexibility. See In re Hildebrand, 2007 VT 5, ¶ 12, 181 Vt. 568. In the interest of flexibility, the Vermont Supreme Court has provided an avenue, the Stowe Club Highlands test, to determine when it is appropriate to amend the terms of a permit. Id. ¶ 7 (citing In re Stowe Club Highlands, 166 Vt. 33 (1996)) ("[A]lthough the original conditions may no longer be challenged, they may be amended in appropriate circumstances."); In re Nehemiah Assocs., 168 Vt. 288, 294 (1998).

To determine the appropriate circumstances for amendment in the context of a zoning appeal, the Court considers "(a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology."[24] Stowe Club Highlands, 166 Vt. at 38; Hildebrand, 2007 VT 5, ¶ 12–16 ("The Stowe Club Highlands test allows sufficient flexibility to relieve landowners from permit conditions that have become unworkable while preventing the permit amendment process from becoming a piecemeal referendum on the town plan."). The first question, however, is whether the issues before us trigger a Stowe Club analysis.

a. *The Pavilion*

We begin with the enclosure of the pavilion. The 2019 Site Plan Approval includes a condition concerning the outdoor pavilion:

---

[24] Though this test originated in the Act 250 context, the Vermont Supreme Court has affirmed application of the Stowe Club rationale to the municipal permit amending process "on the reasoning that the competing interests in Act 250 and municipal zoning cases are so similar." In re Lathrop Ltd. P'ship, 2015 VT 49, ¶ 56, 199 Vt. 19 (citing Hildebrand, 2007 VT 5, ¶ 13).

Build a 40' x 60' pavilion as depicted on the site plan. The pavilion will be permanently closed on the north and south ends. The east and west sides will have the ability to be enclosed. This is in lieu of the 60' x 80' tent that was approved in the last permit.

2019 Site Plan Approval at 2, 4. In the Amended Site Plan Approval, the DRB granted Applicant's request regarding the pavilion after finding:

Applicant seeks to confirm that tarp material used on the northerly and southerly portions of the outdoor "pavilion" building meets the requirements set forth in the [2019 site plan]. The applicant proposes to eventually have a drop-down curtain on the easterly side of the building. The westerly wall is enclosed in wood.

Amended Site Plan Approval at 2–3. The DRB included this finding as a condition. See id. at 3.

We conclude that the Applicant's request and the DRB's decision as to the pavilion constituted a clarification of the existing condition rather than a modification or amendment. The Amended Site Plan Approval does not conflict with the condition, it merely elaborates upon the materials and methods to be used for enclosing the pavilion.[25] See 2019 Site Plan Approval at 2; Amendment Application; Amended Site Plan Approval at 2. Applicant's request regarding the pavilion did not require any alteration of the existing condition, and DRB's decision did not alter the condition, therefore the Stowe Club test does not apply. See In re Stowe Highlands Merger/Subdivision Application, 2013 VT 4, ¶ 13, 193 Vt. 142 ("Because the proposed amendment did not require a change in a permit condition, the Stowe Club test was not applicable . . . ."). For that reason, Applicant's request to clarify the requirements for the pavilion does not implicate permit finality concerns.

b. *Portable Toilets and Liquor*

By contrast, Applicant did request changes to conditions regarding portable toilets and liquor, and the DRB approved those changes. We have already rejected the argument that the Court lacks jurisdiction to address these issues.

Based on the record before us, the critical question is whether the changes sought by Applicant trigger a Stowe Club analysis. The application seeks to amend previously approved

---

[25] The permanent wood enclosure of the westerly side was neither required nor prohibited in the original condition. Applicant notes that suggestions for a western enclosure arose at the DRB hearings as a means of noise deflection; Neighbor's property is located to the west.

conditions, and that this Court has consistently applied the Stowe Club test in these circumstances. As the Supreme Court has explained, the test is "intended to assist in assessing the competing policies of flexibility and finality in the permitting process." In re Hildebrand, 2007 VT 5, ¶¶ 7, 13 (quotation omitted). The amendments before us here, however, are seemingly inconsequential and verge on mere administrative adjustments.

The existing condition regarding portable toilets states: "There will be port-o-lets on the east end of the event parking lot and will be removed on the next business day after the event." 2019 Site Plan Approval at 3. The amendment application seeks permission to leave a portable toilet on-site for the "event season," which is May through October. See Amendment Application. The existing condition regarding liquor states: "For some events, as appropriate, they will have outdoor consumption of beer/wine. There will be no liquor served." 2019 Site Plan Approval at 3. The amendment application seeks permission to serve liquor in addition to beer and wine; Applicant received State and local consumption permits. See Amendment Application; Liquor License; Consumption Permit.

In the Act 250 context, rules promulgated by the former Environmental Board and later adopted by the Natural Resources Board have long included a preliminary step to the Stowe Club analysis which distinguishes between conditions involving "critical" issues and non-critical issues. Act 250 Rule 34(E) codifies the Stowe Club analysis but includes this additional step: "In reviewing any amendment application, the District Commission shall first determine whether the applicant proposes to amend a permit condition that was included to resolve an issue *critical* to the issuance of the permit." 16-5 Vt. Code R. § 200:34(E)(1) (emphasis added) [hereinafter "Act 250 Rule 34(E)"]. The Rule requires a Stowe Club analysis for amendments to "critical" conditions but does not require the analysis for amendments to other conditions. See Act 250 Rule 34(E)(1)(a), (2) (if the amendment does not involve a "critical" condition, "the District Commission's inquiry under this rule shall end, and it may consider the amendment application on its merits"). Both this Court and the Vermont Supreme Court have applied Rule 34(E), incorporating the Stowe Club test, in Act 250 decisions. See, e.g., In re Ashford Lane HOA A250 Application, No. 69-5-13 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Dec. 06, 2013) (Walsh, J.); In re Waterfront Park Act 250 Amendment, 2016 VT 39, ¶¶ 1, 11–12, 201 Vt. 596.

We have noted that zoning cases are not specifically governed by Act 250 Rule 34(E).  See DeVita Subdivision Amendment, No. 164-12-17 Vtec, slip op. at 9 (Vt. Super. Ct. Envt. Div. Apr. 23, 2019) (Walsh, J).  In DeVita however, the applicant proposed amendments to a 5-lot subdivision, adding 3 new lots and encroaching on an area which was limited to "accessory farm buildings only."  See id. at 1–3, 7–9 (internal quotation omitted).  The amendment there was substantial, and we had already concluded that regulatory changes weighed in favor of allowing amendment under the Stowe Club test. See id. at 7–9.  We had no reason to consider whether the principles from Act 250 Rule 34(E) should carry over to the municipal context.

Here, the amendments sought are of an entirely different nature.  Because permit amendments in both the zoning and Act 250 context raise such similar questions and competing interests, we find it appropriate to take guidance from Act 250 proceedings in deciding when the Stowe Club test applies.  See In re Hildebrand, 2007 VT 5, ¶ 13 (approving the Stowe Club test for use in the zoning context "[b]ecause the competing interests . . . are so similar" to the Act 250 cases).  Thus, to determine whether the Stowe Club test should apply, the proper question is whether an application seeks to amend a condition that was included to resolve an issue critical to the issuance of the permit under the criteria set forth in the bylaws.  If the answer is yes, we proceed with a Stowe Club analysis. If no, the application should be considered on the merits.

In this case, we see no relationship between the conditions regarding portable toilets and liquor and the applicable requirements of the Bylaws.  See Bylaws §§ 350–52 (setting standards for site plan review).  In other words, there is no indication that these conditions were included to resolve a critical issue for the DRB in granting site plan approval pursuant.  Rather, the amendments sought by Applicant involve only modest tweaks to non-critical conditions. Applicant does not propose any change to the location of or access to portable toilets, but merely asks permission to leave one on-site during event season.  There is no indication that the DRB required removal of the portable toilets after events for any reason other than to adhere to Applicant's original proposal. See 2019 Site Plan Approval at 3.  With respect to liquor, the condition could not have been included to resolve a critical issue because the DRB lacks authority to regulate liquor.  See 7 V.S.A. § 167 (providing for limited regulatory powers at the municipal level, exercised not by the DRB but by "local control commissioners").

We conclude that the conditions regarding portable toilets and liquor were not included to resolve issues critical to the issuance of the permit under the relevant requirements of the Bylaws. As such, we do not apply the Stowe Club test. For the foregoing reasons, we hereby **GRANT** Applicant's motion as to Question 16. Although Question 16 assumes that all three of the clarifications and modifications requested by Applicant are subject to the Stowe Club test, we conclude the opposite. See Statement of Questions. Therefore, we answer Question 16 in the negative with the understanding that Applicant's request need not "satisfy any of the exceptions to the permit finality requirements as required by In re Stowe Club Highlands." See id.

### Conclusion

For the reasons discussed above, Applicant's Motion is **GRANTED IN PART** as to the NOV appeal. Questions 1–5 are **DISMISSED** for lack of subject matter jurisdiction. Questions 14 and 15 are also **DISMISSED** for lack of subject matter jurisdiction.

Question 9 is answered in the affirmative concluding that uses of the pavilion past 9:00 PM constitute "events." Questions 10–13 are answered in the negative as follows: Uses of the pavilion that do not continue past 9:00 PM do not constitute "events." Interpreting the term "events" does not violate the 'Stowe Club Highlands' test, and Applicant has not exceeded 8 "events."

Pursuant to V.C.R.P. 56(f), we are inclined to grant summary judgment in Neighbor's favor on Questions 6–8. At this stage, the record appears to support a determination that Applicant operated the pavilion without a CO (Questions 6–7) and served liquor at the pavilion in violation of the 2019 Site Plan Approval (Question 8). **The parties have 30 days from the date of this decision to file supplemental evidentiary materials and briefing going to these issues, in accordance with V.R.C.P. 56.**

Applicants motion is **GRANTED** as to the Site Plan Appeal. Question 16 is answered in the negative with the understanding that the clarifications and modifications sought by

31

Applicant need not "satisfy any of the exceptions to the permit finality requirements as required by In re Stowe Club Highlands."[26] See Statement of Questions.

Neighbors' motion for additional time for discovery is **DENIED**. Neighbor has not taken appropriate steps under either V.R.C.P. 56 or 26 to make a motion related to discovery procedure nor made a showing that they "cannot present facts essential to justify their opposition." V.R.C.P. 56(d)(2).

Electronically signed on November 17, 2020 at 12:59 PM pursuant to V.R.E.F. 9(d).

_Tom Walsh_

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[26] Our resolution of Question 16 resolves the Site Plan appeal, because Questions 16 presents the sole issue before the Court in that matter. Live issues remain pending in the NOV appeal, which was improperly joined with the Site Plan appeal. For that reason, we must await the resolution of the NOV appeal before issuing a final Judgment Order in this docket.